FIFTH DIVISION

 June 28, 2002

1-97-4354

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

) Cook County.

Plaintiff-Appellee, ) 

)

)

v. )

)

)

SHEILA DANIELS,     )

) Honorable

) Joseph J. Urso,

Defendant-Appellant. ) Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial in 1990 before Judge Michael P. Toomin, defendant Sheila Daniels was convicted of the first degree murder of her paraplegic boyfriend, David McCoy, and was sentenced to an 80-year prison term.
(footnote: 1)  On appeal, with one justice dissenting, this court ruled, 
inter
 
alia
, that the trial court did not err in denying defendant's motion to suppress statements, but reversed defendant's conviction, finding the admission of polygraph results at her trial improper.  
People v. Daniels
, 272 Ill. App. 3d 325 (1994) (
Daniels I
).  Following a second jury trial before Judge Joseph J. Urso, defendant was again convicted of first degree murder and was sentenced to 80 years' imprisonment.  On appeal, defendant contends: (1) that the trial court erred in refusing to hold an evidentiary hearing on her motions to suppress statements; (2) that the trial court erred in quashing her subpoenas to the City of Chicago (City); (3) that the trial court erred in refusing to send her medical reports to the jury during its deliberations; and (4) that her 80-year sentence is unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  For the reasons set forth below, we affirm defendant's conviction, vacate her sentence and remand for resentencing.  Issues (1) and (2) will be considered in published portions of this opinion and issues (3) and (4) will be determined in unpublished portions of this opinion.

BACKGROUND

Defendant's conviction arose from the November 12, 1988, shooting death of McCoy in the garage of the home that he, defendant and her daughter shared at 1654 East 92nd Street in Chicago.  Working through a trace of the gun used in the murder, police returned to defendant's house on November 17, 1988, to question her again about McCoy's death and some telephone logs the police had acquired.  Defendant was asked to go to the police station to assist in reviewing the telephone logs.  Defendant agreed, and while accompanied by three officers, arrived at the police station around 5:30 p.m. that day.  The facts surrounding her stay at the police station and the content of various statements she made to police, including a statement taken by a court reporter wherein defendant admitted to shooting McCoy but claimed it was in self-defense, were laid out at length in 
Daniels I
.  Therefore, only those facts necessary for proper consideration of the instant appeal will be repeated here. 

At the police station, defendant was questioned regarding McCoy's death and admitted to having purchased the gun used in the shooting, but stated it had been stolen by her brother Anthony Daniels.  After defendant told police where Anthony lived, he was picked up and taken to the police station.  Anthony was questioned and released.  

At 11:40 p.m., defendant was advised of her 
Miranda
 rights and agreed to take a polygraph exam, which lasted about 2½ hours.  After learning she had failed the exam, she implicated her brother Tyrone in McCoy's murder.  At 3 a.m. she was placed under arrest for McCoy's death and advised of her 
Miranda
 rights.  About 30 minutes later, she accompanied police to Tyrone's home, where he was arrested and taken to the police station.    

Prior to her first trial, defendant filed a motion to suppress written and oral statements.  In her motion, defendant asserted that she had been illegally arrested in her home without a warrant in the absence of probable cause, which was a violation of her fourth amendment rights as guaranteed by the United States Constitution.  She also asserted that incriminating statements she had given investigators were made in the absence of 
Miranda
 warnings and resulted from prolonged questioning and refusals by police to allow her to contact her attorney and family, which was a violation of her fifth and sixth amendment rights.  

After an evidentiary hearing, Judge Toomin denied defendant's motion to suppress.  With respect to her fourth amendment claim, he found that defendant had voluntarily accompanied police to the station.  As for the voluntariness of her confession, Judge Toomin, citing 
People v. Dodds
, 190 Ill. App. 3d 1083 (1989), and 
People v. Nicholls
, 42 Ill. 2d 91 (1969), ruled that defendant's confession was voluntary.  

In 
Daniels I
, defendant argued, 
inter
 
alia
, that Judge Toomin had erred in denying her motion to suppress statements.  In particular, she contested his determinations that she had voluntarily accompanied police to the station from her home on November 17, 1988, that she had not been tricked by police into accompanying them and that her statement to the polygraph operator was sufficient to establish probable cause for her arrest.  This court rejected all of these arguments, finding that "the circuit court properly denied her motion to suppress."  
Daniels I
, 272 Ill. App. 3d at 336.

After this court reversed her conviction and remanded the case, defendant filed another motion to quash arrest and suppress statements, which was twice amended and once reoffered.  In the original motion filed after remand, defendant stated that some time after 11:30 p.m. on November 17, 1988, officers showed defendant her brother Anthony, who at the time was handcuffed to a wall in the police station.  Anthony was bruised and bloody, apparently as a result of having been beaten.  She alleged that during her interrogation, officers engaged in conduct calculated to psychologically and physically coerce her into making admissions as to her involvement in McCoy's murder, including exhibiting her brother Tyrone to her.  At the time, he was also in the police station and was bleeding after having been beaten by police.  She alleged that police informed her that they would continue beating Tyrone and might even subject her to physical cruelty unless she made admissions relating to her involvement in McCoy's murder.  Defendant sought a hearing on her motion to suppress. 

In her second amended motion to quash arrest and suppress statements filed on May 21, 1996, defendant again alleged she had made admissions due to the physical abuse Tyrone had endured at the hands of the police.  She further alleged that prior to seeing her brother Anthony in a beaten condition, police had threatened to charge her and/or Anthony with McCoy's murder for which they could receive the death penalty.  She also stated that Anthony had been beaten by the police "in an attempt by the officers to frighten, intimidate and otherwise coerce [her] into making admissions to the crime charged."  Defendant again sought a hearing on her motion to suppress. 

During argument on defendant's motion, defense counsel argued that new evidence, that being testimony from defendant's brothers, was now available.  Defense counsel explained that Tyrone, who would have asserted his fifth amendment privilege against self-incrimination at defendant's first trial, would testify at a subsequent hearing.  Counsel further explained that Anthony's testimony, which Judge Toomin had precluded at the previous hearing, would also be presented.  Defense counsel argued that the "necessity and/or sufficiency" of 
Miranda
 warnings had not been previously raised.  It was further argued that whether defendant's status at the police station became custodial before she was informed she was under arrest at 3 a.m. had not been previously raised.  Counsel also asserted that cases had been decided by the United States Supreme Court 
since this court had issued 
Daniels I
 that had the effect of changing the law regarding the admissibility of defendant's statements.  The State argued that the doctrine of law of the case barred a subsequent hearing on defendant's motion.   In denying defendant's request for a hearing on her motion to quash arrest and suppress evidence, Judge Urso stated that the issues raised in the motion "were properly litigated at the trial level and ruled upon by the appellate court."  Judge Urso found that there was no new evidence nor were there exceptional circumstances warranting a hearing on the motion.  After denial of her motion, defendant filed written offers of proof, which stated that, if called to testify at a hearing, Tyrone and Anthony would substantiate the allegations of abuse contained in her second amended motion to suppress.  She later filed her reoffered motion to suppress, which was also denied. 

Following a second jury trial, where defendant's statements to police were again admitted, defendant was found guilty of first degree murder.  Finding that the circumstances surrounding the commission of the murder were brutal and heinous, Judge Urso sentenced defendant to an extended term of 80 years in prison.  Defendant now appeals.   

ANALYSIS  

Defendant first contends that Judge Urso erred in denying her a hearing on her motions to suppress filed after this court's decision in 
Daniels I
.  She asserts that Judge Urso should have allowed her to reopen for proofs because neither Judge Toomin nor this court ruled on the claims she now advances for suppression of her statements, those being her questioning without the benefit of 
Miranda
 warnings while in custody on November 17-18, 1988, and that her statements were coerced and made involuntarily.  Defendant acknowledges that in 
Daniels 
I
 this court ruled that defendant had voluntarily accompanied officers to the police station, but she argues that is a separate and distinct issue from whether she was advised of her 
Miranda
 rights.

In general, under the law of the case doctrine, a rule established as controlling in a particular case will continue to be the law of the case, provided the facts remain the same.  
People v. Patterson
, 154 Ill. 2d 414, 468 (1992).  "The doctrine, however, merely expresses the practice of courts generally to refuse to reopen what has been decided; it is not a limit on their power."  
Patterson
, 154 Ill. 2d at 468-69.  The trial court's decision not to revisit a matter previously litigated in reliance upon the law of the case doctrine will not be reversed absent an abuse of discretion.  
People v. Enis
, 163 Ill. 2d 367, 387 (1994).     

Defendant argues that the reopening of her case is not barred by the doctrine of law of the case because in 
Daniels I
 we ruled, with respect to her motion to suppress, that she had voluntarily accompanied police to the station and that investigators did not employ a ruse in order to induce her to leave her home.  She claims the propriety of the police conduct once she arrived at Area 2, which implicates a fifth amendment violation, has never been ruled upon.

In 
People v. Hattery
, 183 Ill. App. 3d 785, 805-06 (1989), this court stated:

"With regard to pretrial motions to suppress evidence, the rule is that once a motion to suppress has been ruled upon by one judge, that motion cannot be relitigated later before another judge, absent a showing of exceptional circumstances or of additional evidence that has become available since the first hearing to suppress.  [
People v. Henderson
, 36 Ill. App. 3d 355, 370 (1976).]  However, '[i]n a criminal case, where one party is successful in contesting a pretrial order on appeal, reversal and remandment does not preclude the trial court from considering other issues originally raised in the pretrial proceedings but not finally determined by the appellate court on the merits.'  [
People v. Feagans
, 134 Ill. App. 3d 252, 257 (1985).]"

Defendant eloquently states her position in her reply brief, where she explains that in her view: 

"[T]he [law of the case] doctrine applies 
not
 to 'motions' as such, but, rather, to 
legal
 
issues
 determined almost invariably after a hearing.  If a court of review has decided a 
legal
 
issue
 then the successor judge may rely upon that ruling as settled law, and, in the absence of a change in the law by a still higher court, or new factual basis, apply it to the case before him or her.  But if the 
legal
 
issue
 has never been presented to a trial court and a hearing conducted thereon, and/or if the court has never issued a ruling on the precise 
legal
 
issue
 then the doctrine of the 'law of the case' simply cannot be applied because, in reality, there is no law of the case to apply.  Thus, it is the position of *** defendant that the 
only
 'law of the case' in this case is the law pronounced by this court in its opinion in [
Daniels I
].  If this court did not previously consider a legal issue, and rule upon it, there can be no 'law of the case' which successor Judge Urso should have heeded."  (Emphasis in original.)

We disagree with defendant's position that Judge Toomin did not rule on the fifth amendment aspects of her first motion to suppress.  
This position is completely belied by the record.  In his lengthy findings of facts, Judge Toomin first reiterated the theories raised in defendant's motion to suppress.  After discussing the fourth amendment issue, Judge Toomin continued: 

"The other ground that the court notes from the motion is centered in both the 5th and 6th Amendments alleging a denial of her right to have an opportunity to consult with counsel, coupled with repeated questioning of her over a long period of time during which she was allegedly held incommunicad[o] *** and also that her will was overborne and she was impliedly coerced by the detective involved here."

After a very lengthy recitation of defendant's testimony at the evidentiary hearing, Judge Toomin specifically said that defendant "testified she was questioned repeatedly, though she asked to call Edward Vrdolyak [
sic
] who she considered to be her attorney."  

After a recitation of more testimony at the hearing, the court denied defendant's motion to suppress based on the fourth amendment, finding that she was not in custody until after she gave an incriminating statement to the polygraph operator.  The court continued:

"As
 to the right to counsel, it is, of course, the State's burden to establish the voluntariness and this essentially refines itself to issues of credibility in this case.  

The court finds on the basis of the credible evidence that *** there was no invoking of the right to counsel.  

Further, there is no credible evidence in this record that the defendant's will was overborne ***." 

Judge Toomin then cited several cases supporting his holding and found that defendant's testimony was incredible.  The court then denied defendant's motion to suppress her oral and written statements.  

This court affirmed Justice Toomin's denial of defendant's motion to suppress and therefore addressed defendant's fourth and fifth amendment rights.  In 
Daniels I
, this court noted, "Prior to trial, defendant moved to quash her arrest and suppress statements on grounds that she was illegally arrested in her home without a warrant and that she was denied access to her attorney."   
Daniels I
, 272 Ill. App. 3d at 331.  There followed a lengthy recitation of the testimony at the evidentiary hearing on the motion to suppress.  In pertinent part, this included the following:

"On November 14, 1988, Edward Vrdolyak, an attorney and longtime friend, came to [defendant's] home and offered to help.  Based on that statement, she considered him to be her attorney."  
Daniels I
, 272 Ill. App. 3d at 332.  Further, after being at the station for two hours, "She was not allowed to use the phone despite her numerous requests to call both Vrdolyak and her sister."  
Daniels I
, 272 Ill. App. 3d at 333.  She asked to call Vrdolyak during the polygraph exam.  
Daniels I
, 272 Ill. App. 3d at 333.  After reciting the testimony at the hearing, we concluded as follows:

"Defendant's motion to suppress was denied.  The circuit court expressly found that she was not arrested or seized in her home, but instead voluntarily accompanied the officers to the police station.  The court also found that probable cause existed after defendant spoke with the polygraph operator and admitted knowledge of the murder.  Finally, the court found 'incredible' defendant's testimony that the assistant State's Attorney purported to be her attorney, and stated that no credible evidence existed that her will was overborne or that she had invoked her right to counsel."  
Daniels I
, 272 Ill. App. 3d at 334. 

After a discussion of the evidence and the applicable case law, which consisted almost entirely of defendant's arguments based on the fourth amendment, we held, "Accordingly, we find that the circuit court properly denied her motion to suppress."  
Daniels I
, 272 Ill. App. 3d at 336.  While this court in 
Daniels I
 did not provide an analysis of our holding affirming the trial court's denial of defendant's motion to suppress based on fifth and sixth amendment grounds, we certainly addressed the "legal issue" raised by defendant and we rejected it.  Judge Toomin cited several cases which supported his holding and made extremely detailed findings of fact.  The fact that this court affirmed that holding in the manner that we did shows that we considered the same issues and came to the same conclusion.  The fact that the trial court did a more thorough job of analyzing the issues than did this court speaks well of Judge Toomin's abilities.  Clearly, the "law of the case" doctrine applies to defendant's motion to suppress her statements.    

Defendant also argues that the trial court erred in failing to allow her to reopen her case in light of the testimony Tyrone and Anthony would present at a hearing on her motion to suppress.  She asserts their testimony constitutes new evidence, which bars application of the law of the case doctrine.  See 
People v. Williams
, 138 Ill. 2d 377, 392 (1990).

As for defendant's claim that there was new evidence upon which to reopen the motion to suppress statements, again, we disagree.  As we pointed out in 
Daniels I
, defendant never asserted in her motion to suppress ruled upon by Judge Toomin that she confessed because she saw her brothers in a beaten condition.  In fact, the motion to suppress at issue in 
Daniels I
 makes no mention of Tyrone's or Anthony's condition as a basis for defendant's statements.  After remand, defendant filed a second motion to suppress statements in which she asserted that she gave her confession because she was influenced by seeing Tyrone after he had suffered injures at the hands of the police.

The sequence of events relating to the arrests of Anthony and Tyrone as recited in 
Daniels I
, 272 Ill. App. 3d at 333-34, is helpful to an analysis of this issue.  Shortly after arriving at the police station, the detectives confronted defendant with the fact that she owned the gun.  Defendant admitted this but said that her brother Anthony had stolen it from her and she gave the detectives his address.  The police picked Anthony up based on defendant's utterly false story.  While defendant did testify at her motion to suppress that she saw Anthony injured in the police station before she gave a statement to the polygraph operator, she never asserted that this fact influenced her decision to confess.  In her statement to the polygraph operator, defendant said Tyrone had the gun and he shot McCoy.  She then showed the police where Tyrone lived.  Defendant testified that she later saw Tyrone at the police station and that he apparently had also been beaten.  She testified that she told him to "sign the papers" so they could go home but Tyrone refused.  She testified that she gave a court-reported confession to a woman attorney, not realizing that she was an assistant State's Attorney.  She agreed to "go along" with the police because she was no longer able to resist and she wanted to go home.  She signed the court-reported statement without reading it because she did not have her eyeglasses.  Tyrone did not testify at defendant's motion to suppress. In this appeal, defendant asserts that Tyrone is now available to testify that the police beat him, corroborating defendant's testimony that she saw him in an injured state.  The reason the evidence is "new" is that Tyrone would have invoked his fifth amendment right against self-incrimination had he been called to testify at defendant's motion to suppress.  

We reject defendant's argument that this is new evidence.  Defendant was clearly aware that she had seen Tyrone and he had been injured.  However, she did not attempt to call Tyrone at the hearing on her motion.  Tyrone did testify in this case at his own motion to suppress, which was completed before defendant's own motion was completed.  The record reflects that he testified that he had been struck, but he also testified that he did not make his statement because of this mistreatment, he made it because defendant told him to cooperate.  Indeed, Tyrone raised this issue in his appeal.  
Daniels
, 230 Ill. App. 3d at 532.

Defendant did not ask the trial court to consider Tyrone's testimony at his motion to suppress in ruling on her motion to suppress.  The fact that defendant did not ask for this to be done indicates that defendant's theory in her first motion to suppress had nothing to do with Tyrone's condition.  

As for Anthony, the police picked him up after defendant falsely implicated him as being involved in the homicide.  In her motion to suppress filed before her first trial and in the first motion to suppress filed with Judge Urso, defendant said nothing about Anthony's beaten condition as being a reason for her inculpatory statements.  Defendant testified at her suppression hearing before Judge Toomin that she had seen Anthony while at the police station and he appeared to have been beaten.  Despite the presence of this fact, which was known to defendant at her first trial, she did not assert it as a reason for suppression before Judge Toomin.  Consequently, Judge Toomin did not allow Anthony to testify during the hearing on that motion.  Defendant did not assert this as a ground for suppressing her statement until her first amended motion before Judge Urso.  Defendant appears to be redrafting motions to suppress, after having the benefit of Judge Toomin's ruling and our affirmance of that ruling
, in an attempt to put a new spin on an old motion. New theories supporting suppression do not constitute "additional evidence that has become available since the first hearing to suppress."  
Hattery
, 183 Ill. App. 3d at 805-06. 

This court recently addressed this issue. In 
People v. Lawson
, 327 Ill. App. 3d 60 (2001), the first trial court granted the defendant's motion to quash arrest and suppress evidence on the ground that the defendant had been arrested without probable cause.  The State appealed the suppression order, but only challenged the standard that the trial court applied.  The order was affirmed on appeal.  Upon remand, the State filed a petition for a hearing on attenuation.  The second trial court denied this petition but did hold an independent basis hearing for the suppressed in-court identification.  The court then found such an independent basis existed and defendant was again convicted upon retrial.

This court reversed, holding "[s]ince the State did not raise the attenuation and independent basis issues at the hearing on the motion to suppress, the State cannot raise them after the order to suppress is final and has been affirmed on appeal."  
Lawson
, 327 Ill. App. 3d at 65.  This court also rejected the State's argument that because the first trial judge did not address the issues of attenuation or independent basis, the second trial judge was not precluded from considering these issues.  In rejecting the State's argument, this court relied on the holding of our supreme court in 
People v. Williams
, 138 Ill. 2d 377 (1990), which in turn relied upon the holding in 
People v. Taylor
, 50 Ill. 2d 136 (1971).  

The court in 
Taylor
 held that once a suppression order is entered, it may be reconsidered or appealed, but a second hearing on the merits may not be held.  The 
Williams
 court stated: 

"[N]one of our 
Taylor
 line of cases limited the 
Taylor
 rule only to those subsidiary issues that may actually have been considered by a judge whose appealable order a judge of coordinate authority later undertakes to modify.  In the present cause, the order was to quash an arrest and suppress evidence, period.  Each of the 
Taylor
 line of cases speaks of an order itself, not merely of issues upon which the order may or may not have turned."  
Williams
, 138 Ill. 2d at 390-91.

Applying this logic to the case before us, we reject appellate counsel's assertion that where neither a trial court nor a court of review has considered a legal "issue," the "law of the case" doctrine is inapplicable to that issue. 

In a motion to cite additional authority filed after oral arguments were heard in this case, defendant cited the recent holding in 
People v. Jones
, 315 Ill. App. 3d 500, 504 (2000), where this court stated:

"[P]rinciples of collateral estoppel do not bar relitigation of a pretrial ruling after remand, where special circumstances are present.  
People v. Enis
, 163 Ill. 2d 367, 386, 645 N.E.2d 856, 864 (1994).  A trial court retains jurisdiction to reconsider an order it has entered, even after remand, as long as the cause is pending before the trial court.  
Enis
, 163 Ill. 2d at 387, 645 N.E.2d at 865.  Viewing the matter in terms of the doctrine of law of the case, there is no bar to the trial court conducting a new hearing.  
Enis
, 163 Ill. 2d at 387, 645 N.E.2d at 865; see also 
People v. Huff
, 308 Ill. App. 3d 1046, 1049, 721 N.E.2d 1219, 1221 (1999), [judgment vacated by 
People v. Huff
, 195 Ill. 2d 87 (2001)]."

The "special circumstances" present in 
Jones
 was the fact that the appellate court had previously reversed the defendant's conviction and held that the trial court's denial of a motion to suppress as to one of three statements was erroneous.  On remand, the trial court allowed the State to use the other two statements that the appellate court had not addressed.  The appellate court held that the trial court had a duty to reconsider its ruling after the appellate court found the ruling as to one statement was erroneous.  The 
Jones
 court subsequently found this error did not require reversal.

The 
Jones
 court relied heavily on the holding in 
People v. Enis
, 163 Ill. 2d 367 (1994).  There, our supreme court reversed the defendant's murder conviction based on the prosecutor's improper cross-examination.  
People v. Enis
, 139 Ill. 2d 264, 300 (1990).  In his first appeal, the defendant did not challenge the trial court's pretrial denial of his motions to quash arrest and suppress evidence.  On remand to the trial court, the defendant renewed these motions and the trial court denied the defendant's request to reconsider.  The supreme court affirmed this denial, stating, "The defendant could have raised these arguments in his first appeal, and his failure to do so justified the trial court's refusal to reconsider its rulings, under principles of collateral estoppel."  
Enis
, 163 Ill. 2d at 386.  The supreme court cited two facts which have been found to be "special circumstances" supporting a trial court's decision to hold new 
de
 
novo
 hearings on motions to suppress after remand.  One such circumstance was where the defendant's conviction was reversed and remanded for a new trial where the State failed to call a material witness at the hearing on the defendant's motion to suppress statements.  
People v. Feagans
, 134 Ill. App. 3d 252 (1985).  Another was where the defendant had been acquitted of some charges, thereby precluding him from seeking appellate review of the trial court's rulings.  
People v. Mordican
, 64 Ill. 2d 257 (1976).  As no such special circumstances were presented in 
Enis
, "there was no abuse of discretion in the trial court's refusal to revisit its rulings on these matters in preparation for [the] defendant's second trial."  
Enis
, 163 Ill. 2d at 387.  The instant case is similar to 
Enis
 and dissimilar to 
Jones
. 

Defendant argues next that recent case law and significant changes regarding the voluntariness of a defendant's confessions requires a hearing on her motion to suppress.  She asserts that had this court and Judge Toomin had the benefit of the United States Supreme Court's ruling in 
Thompson v. Keohane
, 516 U.S. 99, 133 L. Ed. 2d 383, 116 S. Ct. 457 (1995), his original motion to suppress would have been granted.  

In 
Thompson
, the Supreme Court held that a state court's determination as to whether a suspect was "in custody" while being interrogated for purposes of 
Miranda
 was not entitled to a statutory presumption of correctness during federal 
habeas
 
corpus
 review, but was a mixed question of law and fact warranting independent review by a federal 
habeas
 court.  
Thompson
, 516 U.S. at 116, 133 L. Ed 2d at 396, 116 S. Ct. at 467.  In so ruling, the Court stated that the ultimate determination for whether a defendant is "in custody" for 
Miranda
 purposes involved "[t]wo discrete inquiries ***: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."  
Thompson
, 516 U.S. at 112, 133 L. Ed. 2d at 394, 116 S. Ct. at 465.  In reliance upon this two-part inquiry, defendant argues that no longer does a defendant's voluntary and consensual trip to the police station to answer questions end the inquiry as to whether the defendant is in custody and entitled to 
Miranda
 warnings, as was ruled by Judge Toomin and this court in 
Daniels I
.
  

We do not dispute that a change in the law is an exception to application of the law of the case doctrine.  See 
Relph v. Board of Education of DePue Unit School District No. 103
, 84 Ill. 2d 436, 443 (1981); 
Proesel v. Myers Publishing Co.
, 48 Ill. App. 2d 402, 404 (1964).  However, we are unpersuaded by defendant's reliance upon 
Thompson
.  Initially, defendant's case is not before us on a federal 
habeas
 review, and we therefore find application of the Court's holding in 
Thompson
 limited.  Secondly, the two-step analysis the Court set out in 
Thompson
 was the law in Illinois at the time Judge Toomin ruled upon defendant's motion to suppress.  See 
People v. Lucas
, 132 Ill. 2d 399, 417-18 (1989).  A review of Judge Toomin's statements in open court establishes that he applied this test when ruling on defendant's motion to suppress.

[The following is unpublished under Supreme Court Rule 23.]

Nonpublishable material removed here.

[The preceding is unpublished under Supreme Court Rule 23.]

Therefore, based upon the facts before us, we find that Judge Urso did not err in refusing to grant defendant a second hearing on her motion to suppress based upon new evidence. 

II.  Quashing of Subpoenas

Defendant contends next that the trial court erred in quashing her subpoenas and asserts she should have been granted an evidentiary hearing on her motion to suppress based on the material sought in those subpoenas. 

After the trial court denied defendant's amended motion to quash arrest and suppress statements, she was granted leave to file an amended motion to suppress statements.  On January 23, 1997, defendant filed her "Reoffered Second Amended Motion to Quash Arrest and Suppress Statements," which was identical to her second amended motion to suppress.  The proffered testimony of Tyrone and Anthony was included with the motion, substantiating the allegations of abuse contained in defendant's motion.

In connection with the motion to suppress, defendant filed two subpoenas 
duces
 
tecum
 upon the City, requesting, 
inter
 
alia
, the production of all documents relating to disciplinary complaints against any of the officers at Area 2 who were expected to be called as witnesses at her trial.  The subpoenas also sought official police photographs of all officers on duty at Area 2 during the time she was interrogated in connection with McCoy's murder.   In response, the City moved to quash the subpoenas on the grounds that the materials requested were irrelevant and confidential and that the subpoenas were the result of "speculative fishing expeditions."  Alternatively, the City requested an 
in
 
camera
 inspection of the documents and the issuance of a protective order in the event the subpoenas were not quashed.

After hearing argument on the City's motion, the trial court quashed defendant's subpoena seeking photographs of the officers assigned to Area 2 at the time she was questioned there.  The court ordered an 
in
 
camera
 inspection of records naming officers in relevant police reports, who had complaints of physical abuse or civil lawsuits for abuse filed against them.  Upon the City's motion for reconsideration, the trial court, finding that defendant was undertaking a "fishing expedition," granted the City's motion to quash the subpoenas.

A subpoena is a compulsory process for obtaining witnesses or documentary evidence in all criminal prosecutions and is guaranteed by the sixth amendment.  
People v. Shukovsky
, 128 Ill. 2d 210, 222 (1988); 
People v. Mitchell
, 297 Ill. App. 3d 206, 209 (1998).  To warrant the use of a pretrial subpoena, a defendant must show: (1) that the documents requested are evidentiary and relevant; (2) that the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that he or she cannot properly prepare for trial without production and inspection in advance of trial and that failure to obtain an inspection may tend to unreasonably delay trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."  
Shukovsky
, 128 Ill. 2d at 225.  The trial court's ruling with respect to a motion to quash a subpoena will not be reversed unless the trial court's finding of fact was manifestly erroneous.  See 
People v. Chengary
, 301 Ill. App. 3d 895, 897 (1998).   

In support of her claim of error, defendant relies upon a series of cases mentioning a report (Goldston Report) of the Office of Professional Standards (OPS) summarizing allegations gleaned from other reports concerning allegations of the systematic abuse of prisoners at Area 2 between the years of 1978 and 1986.  In 
People v. Cannon
, 293 Ill. App. 3d 634 (1997), the defendant was arrested in 1983 and taken to Area 2 where, after being interrogated, he admitted to his involvement in the murder under investigation.  Prior to his trial, the defendant filed a motion to suppress claiming statements he had given police were the result of police torture.  Following a hearing on the motion, the trial court denied the motion.  On direct appeal, this court affirmed the trial court's denial of the motion to suppress, but remanded the case for a hearing on the prosecutor's use of peremptory challenges.  
People v. Cannon
, 150 Ill. App. 3d 1009, 1024-25 (1986).  After a hearing pursuant to 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the defendant was granted a new trial, where he again moved to suppress statements, arguing now that he could prove other suspects had also been tortured at Area 2.  The trial court denied the defendant's request for a new suppression hearing.  The defendant was convicted following a second trial and he appealed arguing that the OPS report regarding abuse of arrestees at Area 2 was "new evidence" that was not available to the defendant prior to his first trial.  We agreed, reversed the defendant's conviction and ordered a hearing on his motion to suppress.  
Cannon
, 293 Ill. App. 3d at 642-43.

In 
People v. Patterson
, 192 Ill. 2d 93 (2000), the defendant was convicted of two counts of murder committed during a forcible felony and was sentenced to death.  Prior to his trial, the defendant had moved to suppress statements, arguing they were the result of police misconduct.  The motion was denied and our supreme court affirmed that ruling.  
People v. Patterson
, 154 Ill. 2d 414, 489 (1992).  In an amended postconviction petition, the defendant argued the existence of new evidence, that being the OPS report, warranted a hearing on his petition.  The trial court disagreed and dismissed the petition.  The supreme court reversed that determination and granted the defendant a hearing on his petition.  
Patterson
, 192 Ill. 2d at 138-45.  Under similar facts, the same result was reached in 
People v. King
, 192 Ill. 2d 189, 198-99 (2000).

In reliance upon 
Cannon
, 
Patterson
 and 
King
, defendant argues the OPS report constitutes new evidence, entitling her to a hearing on her reoffered amended motion to suppress.  

In 
People v. Maxwell
, 173 Ill. 2d 102 (1996)
, the defendant similarly alleged that he was entitled to an evidentiary hearing on his postconviction petition because of newly discovered evidence regarding Area 2 which disclosed a pattern of brutality directed at suspects in custody.  
Our supreme court found that without some evidence that the defendant was injured, evidence of the treatment of other suspects could not, by itself, be the basis for an evidentiary hearing.  
Maxwell
, 173 Ill. 2d at 120-21.

In 
People v. Hinton
, 302 Ill. App. 3d 614 (1998), this court addressed the defendant's contention on appeal that he was entitled to an evidentiary hearing on his postconviction petition because he had new evidence which showed "systematic torture" at Area 2.  In support, he attached to his petition an affidavit from an Illinois attorney, reports from OPS detailing the abuse at Area 2, findings from the Chicago police board regarding Area 2 and his own affidavit in which he asserted that he was beaten, pistol-whipped, shocked and suffocated.  This court first looked to the holdings in 
People v. Hobley
, 159 Ill. 2d 272 (1994) (
Hobley I
), and 
People v. Hobley
, 182 Ill. 2d 404 (1998) (
Hobley II
).  

In 
Hobley I
, the supreme court found that it was not error for the trial court to bar the testimony at trial of three people who claimed they had also been abused by the same officer who abused Hobley.  The court found that there was no evidence that the defendant had sustained injuries consistent with his claim of police brutality.  Without evidence of injury, it was not error to exclude the prior allegations of abuse.  
Hobley I
, 159 Ill. 2d at 312.

Hobley subsequently filed a postconviction petition alleging that he had newly discovered evidence of police brutality at Area 2.  This new evidence consisted of a report from OPS and transcripts of testimony from other alleged victims of abuse.  Our supreme court held that the new evidence did not alter its determination on direct appeal that the defendant did not suffer injuries consistent with his claims of abuse.  
Hobley II
, 182 Ill. 2d at 448-49.

Applying the analysis used in 
Hobley I
 and 
Hobley II
 to the facts before it, this court in 
Hinton
 held that the new evidence presented in the defendant's postconviction petition did not entitle the defendant to an evidentiary hearing because he, like Hobley, did not present sufficient evidence of an injury.  
Hinton
, 302 Ill. App. 3d at 622.

Similarly, in 
Hinton
, this court rejected the defendant's argument that the postconviction court erred in quashing his subpoenas requesting any complaints involving excessive force against the officers identified in the defendant's case.  The trial court found that the defendant waived the issue of his allegedly coerced confession by failing to raise it on direct appeal.  On appeal, this court rejected the defendant's argument which we characterized as being based on a claim of new evidence.  We stated that, "Pursuant to 
Hobley II
, defendant's argument fails.  This 'new evidence' would not cure defendant's inability to establish that he sustained an injury."  
Hinton
, 302 Ill. App. 3d at 625.

The facts in the instant case do not begin to arise to the level of the evidence presented by the defendant in 
Hinton
.  There, the defendant had asserted in his motion to suppress that he had been beaten by the police.  Here, defendant has never said she was beaten.  As to the scope of the subpoenas, the defendant in 
Hinton
 sought only the complaints of excessive force made against the detectives who were identified in the defendant's case.  In the instant case, defendant's discovery requests are much broader than those in 
Hinton
.       

We hold that the OPS reports are only relevant if defendant had asserted in her first motion to suppress before Judge Toomin that she confessed to the police because defendant herself was physically abused or because of the apparent mistreatment of Anthony and Tyrone.  As pointed out earlier, this is an entirely new theory raised by defendant after the denial of her first motion to suppress and affirmance on appeal of that denial.  Although the OPS report citing police misconduct at Area 2 has been brought to light since the time defendant and her brothers were questioned there, that does not alter the fact that defendant did not raise the issue of police brutality as a basis for suppression until years later.  Thus, we cannot say that the trial court's granting of the City's motion to quash the subpoenas was in error.      

[The following is unpublished under Supreme Court Rule 23.]

Nonpublishable material removed here.

[The preceding is unpublished under Supreme Court Rule 23.] 

Accordingly, the judgment of the circuit court of Cook County is affirmed in part, vacated in part and this case is remanded for resentencing.

Affirmed in part and vacated in part; cause remanded.

CAMPBELL, P.J., and GREIMAN, J., concur.

FOOTNOTES
1:
In a separate bench trial, defendant's brother, Tyrone Daniels, was also convicted of first degree murder in connection with McCoy's death.  His conviction and sentence were affirmed in 
People v. Daniels
, 230 Ill. App. 3d 527 (1992).