Second Division
August 14, 2007

No. 1-06-0475

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 98 CR 15711 |
| DARRYL SUTTON, | ) ) | Honorable Thomas M. Tucker |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HALL delivered the opinion of the court:

Following a jury trial, defendant Darryl Sutton was convicted of seven counts of murder for the rape and shooting death of Monica Rinaldi. He was sentenced to four 100-year extended-term prison sentences and three natural life sentences. On direct appeal we reversed defendant's conviction and remanded the case for a new trial after we determined, among other things, that the trial court erred in admitting the hypnotically enhanced testimony of sole eyewitness David Janik. *People v. Sutton*, 349 Ill. App. 3d 608, 622, 812 N.E.2d 543 (2004).

The State has now filed this interlocutory appeal pursuant to Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)), along with a certificate of substantial impairment, seeking to overturn two pretrial rulings the trial court made on remand suppressing Janik's out-of-court statements to police as well as his lineup identification of defendant and his potential in-court

1-06-0475

identification of defendant at the upcoming retrial.

The State contends on appeal that the trial court erred in suppressing Janik's lineup identification of defendant and his potential in-court identification of defendant without first holding a pretrial evidentiary hearing to determine whether these post-hypnotic identifications were based upon Janik's independent pre-hypnotic recall. The State also contends the trial court erred in finding that Janik's out-of-court statements to responding police officers at the scene and in the ambulance were inadmissible under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). For the reasons which follow, we affirm in part, reverse in part, and remand the cause for further proceedings.

The facts of this case have already been set forth at length in our prior opinion and need not be repeated here in their entirety. To the extent particular facts are important to the issues before us, they will be discussed.

The relevant facts and procedural history are as follows. Shortly after midnight on February 14, 1991, police officers responded to the call of a man ringing doorbells of houses located on the 4000 block of Forest Avenue in Brookfield, Illinois. Upon their arrival police found David Janik staggering and bleeding. Janik told police he had been shot and robbed and

that his girlfriend had also been shot. Police discovered Janik's girlfriend, Monica Rinaldi, lying across the backseat of her car parked in a nearby alley. Rinaldi was unclothed and had sustained a fatal gunshot wound to the head.

Officer Timothy Moroney rode with Janik in an ambulance to the hospital. On the way to the hospital, Janik allegedly gave the officer a brief account of events leading up to the shootings along with a general description of the assailant. According to Officer Moroney, Janik described the assailant as a black man of about 30 to 35 years of age, with a moustache, wearing a dark coat and hat. At trial, however, Janik had no memory of his conversation with Officer Moroney.

Doctors discovered that although Janik's gunshot wound to the head had not penetrated his cranium or caused major vascular injuries, he had suffered amnesia regarding the offense. Hospital charts revealed Janik could not remember anything from the time he left work on February 13, 1991, to the time he awoke in the hospital, and initially could not remember the day or year it was.

Janik was released from the hospital after five or six days. Following his release, Janik viewed a photographic array but was unable to identify his assailant from the photographs.

Shortly thereafter, from March 1991 to December 1991, Janik

1-06-0475

underwent periodic sessions of hypnosis and other memory-retrieval therapies such as guided imaging and dream interpretation in an effort to identify the assailant. Janik testified that his memory came back "in bit and pieces." Medical notes reveal that during one therapy session Janik remarked that the assailant had "Mexican" like features.

At trial, conflicting accounts were given as to the time period a composite sketch of the assailant was made. Officer Michael Manescalchi testified that Janik assisted a police sketch artist in preparing a composite sketch of the assailant on February 28, 1991. Janik, however, testified that by May 11, 1991, he still could not visualize the assailant's face. He testified that after one particular therapy session he regained memory of what the assailant looked like and afterwards enlisted the services of an artist friend to draw a composite sketch of the assailant.

In September 1991, approximately six months into his therapy, Janik allegedly provided Officer Manescalchi with a more detailed description of the assailant and a somewhat different version of the offense than he had previously given police. Rather than merely describing the assailant as a black man of about 30 to 35 years of age, with a moustache, the offender was now described as a black male, approximately 5 feet 11 inches in

height, weighing 175 pounds, with a mustache, medium skin, and black hair cut very short and neat. Rather than merely describing the assailant as wearing a dark coat and hat, the attacker was now described as having worn a caramel-colored leather driving hat with matching leather jacket.

In addition, Janik's prehypnotic and posthypnotic statements set forth different accounts of the offense. Janik initially told Officer Moroney he was shot after he was forced into the trunk of the car and the car had traveled an unknown period of time. However, in his posthypnotic statement, Janik stated he was shot as he put one foot in the trunk of the car.

Janik's prehypnotic and posthypnotic statements also differed in the amount of detail surrounding the offense. In the posthypnotic statement, unlike the prehypnotic statement, Janik recounts the specific route the assailant took after hijacking the vehicle and also describes the assailant's threatening comments and behavior.

Janik further states in his posthypnotic statement that while he was in the car's trunk he heard mumbling and felt someone moving around in the car. The car was shaking and he started screaming and kicking the car's backseat whereupon the assailant yelled at him to be quiet. When the car stopped shaking, he heard a gunshot and smelled gunpowder. He then heard

1-06-0475

the driver's-side door open and close. The offender yelled at him through the trunk, "I didn't want to shoot you but if you ID me, I will [kill] you." Janik eventually exited the vehicle and began banging on the doors of nearby homes.

On May 21, 1998, approximately seven years after the shooting incident and his discontinuance of the hypnosis sessions, Janik viewed a lineup and identified defendant as the shooter. Defendant had been placed in the lineup based upon DNA evidence.

On direct appeal, we reversed defendant's conviction and remanded the case for a new trial after we determined that pursuant to the holding in *People v. Zayas*, 131 Ill. 2d 284, 295, 546 N.E.2d 513 (1989), the trial court had erred in admitting Janik's hypnotically enhanced testimony. *Sutton*, 349 Ill. App. 3d at 617. In *Zayas*, the supreme court held that because the relevant scientific community had not generally accepted hypnosis as an accurate or reliable means of restoring a witness's memory, the hypnotically enhanced testimony of anyone other than a defendant was *per se* inadmissible. *Zayas*, 131 Ill. 2d at 295.

We determined that in comparison to Janik's prehypnotic statement, his posthypnotic testimony contained much more detail indicating it was influenced by hypnosis, especially in light of his testimony explaining that over the course of therapy his

1-06-0475

memory came back "in bits and pieces" and that after he stopped therapy he did not regain any more memory of the offense. *Sutton*, 349 Ill. App. 3d at 617. We further concluded that the trial court's error in admitting Janik's hypnotically influenced testimony was compounded when the court improperly precluded defendant from presenting expert testimony concerning the possible effects of hypnosis and other memory-retrieval processes on a witness's ability to accurately recall events. Finally, we determined that defendant's constitutional rights to a fair trial, confront witnesses, and present a defense were violated when, as a discovery sanction, the trial court denied defendant's pretrial discovery request to independently retest the DNA evidence recovered in this case. *Sutton*, 349 Ill. App. 3d at 618.

Following remand, defendant filed a motion to suppress Janik's testimony on the ground that it was hypnotically enhanced and should be suppressed pursuant to the holding in *Zayas*. Defendant argued that since we determined in *Sutton I* that Janik's posthypnotic statements were influenced by hypnosis and were therefore *per se* inadmissible under *Zayas*, the law of the case required his testimony be suppressed. The State countered that the trial court should not suppress Janik's testimony without first conducting a pretrial evidentiary hearing to determine whether the testimony was based upon his independent

-7-

1-06-0475

prehypnotic recall.

The trial court granted the defendant's motion suppressing Janik's testimony, without holding an evidentiary hearing, concluding that the testimony was rendered inadmissible under *Sutton I*. The trial court also granted defendant's motion *in limine* excluding Janik's out-of-court statements given to police at the scene and in the ambulance pursuant to *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). After its motion to reconsider the *Crawford* ruling was denied, the State filed this interlocutory appeal along with a certificate of substantial impairment seeking to overturn the two rulings.

ANALYSIS

The State contends the trial court erred in suppressing Janik's 1998 lineup identification of defendant and his expected in-court identification of defendant at the retrial, without first holding a pretrial evidentiary hearing to determine whether these posthypnotic identifications were based upon Janik's independent prehypnotic recall. The State maintains the trial court erred in this regard because it improperly concluded that our finding in *Sutton I* -- that Janik's trial testimony was hypnotically influenced -- constituted the law of the case

-8-

precluding the trial court on remand from holding such an evidentiary hearing.

Under the law of the case doctrine, issues presented and disposed of by a reviewing court in a prior appeal are binding upon remand to the trial court and on subsequent appeal to the reviewing court unless the facts presented are so different as to require a different interpretation or a higher court has changed the law. *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 47, 692 N.E.2d 1327 (1998); *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 352 Ill. App. 3d 399, 417, 815 N.E.2d 924 (2004). The law of the case doctrine was developed to ensure uniformity of decisions, maintain consistency during the course of a single trial, and bring litigation to an end. *Emerson Electric Co.*, 352 Ill. App. 3d at 417.

There are two exceptions to this doctrine. The first exception applies when a higher reviewing court, following the first appeal, makes a contrary ruling on the precise issue of law on which the appellate court based its prior decision. *Martin v. Federal Life Insurance Co.*, 268 Ill. App. 3d 698, 701, 644 N.E.2d 42 (1994). The second exception, which the State contends applies here, allows a reviewing court to depart from the doctrine if the court determines that its prior decision was palpably erroneous. *Martin*, 268 Ill. App. 3d at 701.

1-06-0475

We disagree with the State's contention that our decision in *Sutton I* was palpably erroneous.

However, as a preliminary matter, we reject defendant's argument that the State waived this issue by failing to challenge the *Sutton I* decision in a petition for rehearing or a petition for leave to appeal.  Review of the record shows that on direct appeal and following remand, the State has consistently maintained the position that Janik's lineup identification testimony and in-court identification of defendant were admissible.  Under these circumstances it can hardly be said that the State sat on its rights thereby waiving this issue.

Moreover, defendant cites no legal authority supporting his assertion that in order to preserve an issue for interlocutory appeal under Supreme Court Rule 604(a)(1), the State must first either file a petition for rehearing or a petition for leave to appeal.  Under Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), any argument not supported by citation to legal authority is deemed waived and need not be addressed on appeal. *People v. Morales*, 343 Ill. App. 3d 987, 991, 799 N.E.2d 986 (2003).

In another preliminary argument, defendant contends the State's claims are not properly before this court pursuant to Supreme Court Rule 604(a)(1) because the State is not actually

-10-

appealing the trial court's suppression ruling, but is instead using the interlocutory appeal to challenge our decision in *Sutton I* in lieu of filing a petition for rehearing. We disagree.

As mentioned, following remand defendant filed a motion to suppress Janik's testimony on the ground that since we had determined in *Sutton I* that Janik's posthypnotic statements were influenced by hypnosis and were therefore *per se* inadmissible under *Zayas*, the law of the case required his testimony be suppressed. After the trial court granted the motion and denied the State's motion to reconsider, the State appealed pursuant to Supreme Court Rule 604(a)(1).

Supreme Curt Rule 604(a)(1) provides in relevant part that "[i]n criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** suppressing evidence." 188 Ill. 2d R. 604(a)(1). Rule 604(a)(1) permits the State to appeal a pretrial suppression order if the substantive effect of the order suppresses evidence and the suppression substantially impairs the State's ability to prosecute the case. *People v. Young*, 82 Ill. 2d 234, 247, 412 N.E.2d 501 (1980); *People v. Sargeant*, 292 Ill. App. 3d 508, 510, 685 N.E.2d 956 (1997).

In the instant case, the trial court's order suppressing

1-06-0475

Janik's testimony had the substantive effect of preventing evidence from being admitted at trial and impairing the State's ability to prosecute the case.  Therefore, the State's claims are properly before this court pursuant to Rule 604(a)(1).

Turning to the merits, a trial court's decision not to revisit a matter previously litigated in reliance upon the law of the case doctrine will not be reversed absent an abuse of discretion. *People v. Daniels*, 346 Ill. App. 3d 350, 355, 805 N.E.2d 934 (2004).  The State maintains that our decision in *Sutton I* was palpably erroneous and therefore the trial court erred in concluding that the decision constituted the law of the case.

The State contends that our decision in *Sutton I* was palpably erroneous under *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987), because we improperly acted as fact finder in concluding that Janik's posthypnotic identification of defendant was influenced by hypnosis.  The State maintains that pursuant to *Wilson*, the matter should be remanded to the trial court for a pretrial evidentiary hearing to give the State an opportunity to present evidence establishing that Janik's posthypnotic identification of defendant was based upon his prehypnotic recall.  The State asks us to reverse the trial court's ruling and remand the cause for a full pretrial evidentiary hearing.  We

-12-

must decline the State's request.

In *Wilson*, the supreme court found that although the trial court correctly ruled that a previously hypnotized witness could testify to his prehypnotic recollection, the court should have held a pretrial hearing to determine whether the witness's posthypnotic identification was based upon his prehypnotic recall where he did not view defendant until after the hypnosis session, the extent of the witness's recall was in dispute, and the prehypnotic description was not set forth in the record. *Wilson*, 116 Ill. 2d at 49.

*Wilson* does not support the State's position because the extent of Janik's prehypnotic recall is not in dispute and his prehypnotic description of the assailant is fully set forth in the record. Thus, unlike *Wilson*, there was no need for the *Sutton I* court to remand the case to the trial court for a pretrial hearing to determine the extent of Janik's prehypnotic recollection.

There also was no need for the *Sutton I* court to remand the matter to the trial court for an evidentiary hearing to determine whether Janik's posthypnotic testimony was anchored in his prehypnotic recall since the record clearly showed his testimony was influenced by hypnosis making it *per se* inadmissible under *Zayas*. At the time *Sutton I* was decided, it did not take an

1-06-0475

expert to conclude that Janik's posthypnotic testimony was not based upon his prehypnotic recall where the record revealed he underwent hypnosis after having given the most generic description of the assailant and emerged from hypnosis giving a far more detailed description of the attacker and a significantly different version of events. Moreover, evidence was presented that after Janik ceased therapy he did not regain any more memory of the offense.[1] At retrial, Janik should be allowed to testify

_____

[1] At oral argument it was suggested that the law of the case doctrine might not govern retrial of defendant concerning this issue because the doctrine applied to *Sutton I* only insofar as we found that Janik's trial testimony was hypnotically influenced. It was suggested that since the case was remanded for a new trial and we found Janik had given police prehypnotic statements that were not influenced by hypnosis, the doctrine did not preclude the trial court from conducting a pretrial evidentiary hearing to ascertain if, through the passage of time, Janik had regained any further memory of the offense that was not influenced by hypnosis. It was suggested that this issue should be settled in a pretrial evidentiary hearing at which the trial judge would hear expert testimony from both sides and Janik would be subject to cross-examination.

The problem with these suggestions is that our supreme court

-14-

1-06-0475

to matters he was able to recall prior to undergoing hypnosis.

The State next contends the trial court erred in concluding that the admission of Janik's out-of-court statements to police at the scene and in the ambulance would violate defendant's sixth amendment right to be confronted with the witnesses against him in violation of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The trial court's determination on this issue is subject to *de novo* review. See, *e.g.*, *United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005) (asserted *Crawford* constitutional error reviewed under *de novo* standard).

The sixth amendment states that in all "criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend.

---

in *Zayas* has determined that a previously hypnotized witness is virtually immune from effective cross-examination because having been hypnotized, the witness "gains complete confidence in his 'restored' memory, forgets how it was 'restored,' and is unable to differentiate between that which he was able to recall before hypnosis and that which the hypnosis elicited." *Zayas*, 131 Ill. 2d at 291. Therefore, at retrial, Janik should only be allowed to testify to matters he was able to recall at the first trial prior to undergoing hypnosis.

VI. In *Crawford*, the United States Supreme Court held that the sixth amendment's confrontation clause bars the admission of an out-of-court testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365.

Defendant contends the trial court properly ruled that Janik's out-of-court statements were inadmissible under *Crawford* because they were testimonial in nature and Janik was rendered unavailable for cross-examination due to his having undergone hypnosis. We disagree.

Although the *Crawford* Court did not articulate a comprehensive definition of testimonial statements, it did provide some examples of a "core class" of statements that would be considered testimonial, including: (1) *ex parte* in-court testimony or its functional equivalent such as affidavits or custodial examinations; (2) extrajudicial statements in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions; (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial; and (4) statements taken by police officers in the course

1-06-0475

of interrogations. *People v. Kim*, 368 Ill. App. 3d 717, 719, 859 N.E.2d 92 (2006), citing *Crawford*, 541 U.S. at 51-52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.

Building on *Crawford*, the Court in *Davis* distinguished between testimonial and nontestimonial statements in the context of police interrogations. *Davis v. Washington*, 547 U.S. ____, 165 L. Ed. 2d 224, 236-37, 126 S. Ct. 2266, 2273-74 (2006). The *Davis* Court determined that out-of-court statements are nontestimonial for purposes of the sixth amendment's confrontation clause "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency"; the Court found such statements are testimonial and therefore inadmissible as violative of the confrontation clause "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at ____, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74.

The question of whether a statement obtained through police interrogation is testimonial is a factual inquiry determined on a case-by-case basis. *People v. West*, 355 Ill. App. 3d 28, 36, 823

1-06-0475

N.E.2d 82 (2005). The relevant inquiry is whether the circumstances of an interrogation objectively indicate the officer was acting to meet an ongoing emergency or was rather acting in an investigative capacity to obtain evidence in anticipation of a potential criminal prosecution. *Davis*, 547 U.S. at ____, 165 L. Ed. 2d at 240-41, 126 S. Ct. at 2277.

The facts and circumstances of this case, when viewed objectively, indicate that when officers first arrived on the scene, the primary purpose of their interrogation was to elicit statements to ascertain if they were facing an ongoing emergency and if so, to obtain information necessary to resolve that emergency as opposed to seeking evidence to establish the facts of a past crime. When officers arrived at the scene, they did so in response to calls of a man ringing house doorbells. Officers found Janik staggering and bleeding from the head.

Janik told police he had been shot and robbed and that his girlfriend, Monica Rinaldi, had also been shot. He described the assailant as a black man of about 30 to 35 years of age, with a moustache, wearing a dark coat and hat. Officers discovered Rinaldi, lying across the backseat of her car parked in a nearby alley. She was unclothed and had sustained a fatal gunshot wound to the head.

Under these circumstances any reasonable observer would

deduce that the primary purpose of the initial interrogation was to ascertain if there was an ongoing emergency and if so, to obtain information necessary to resolve that emergency.  We consequently find that the on-the-scene statements elicited from Janik were nontestimonial in nature and therefore not subject to *Crawford* and *Davis*.  Moreover, we find that these statements are admissible under the spontaneous declaration exception to the hearsay rule.

For a statement to qualify as a spontaneous declaration, three requirements must be met, (1) there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) there must be an absence of time for the declarant to fabricate the statement; and (3) the statement must relate to the circumstances of the occurrence. *People v. Williams*, 193 Ill. 2d 306, 352, 739 N.E.2d 455 (2000).  All three requirements were present in the case at bar.  The shooting was sufficiently startling to produce a spontaneous and unreflecting declaration. The record indicates there was an absence of time for Janik to fabricate his statements.  And finally, Janik's statements to police that he had been shot and robbed and that his girlfriend had also been shot relate to the circumstances of the occurrence.

In regard to the interrogation in the ambulance, the circumstances objectively indicate that the primary purpose of

this interrogation was to establish the facts of a past crime rather than ascertain or resolve an ongoing emergency. Once the police secured Janik's safety and called the ambulance, their interrogation evolved and they elicited testimonial responses. Although some portions of Janik's statements to obtain medical help may have arguably been nontestimonial, the bulk of his elicited statements were testimonial in nature where they consisted of an account of the crime and a general description of the assailant.

That being said, we still find that the statements elicited from Janik in the ambulance are admissible and not subject to *Crawford* and *Davis*, since the record and relevant case law indicate he is available for cross-examination.

We reject defendant's contention that Janik is unavailable for cross-examination for purposes of the confrontation clause by virtue of his decision to undergo hypnosis. Even though Janik's posthypnotic statements are inadmissible under *Zayas*, this does not render him legally incompetent to give testimony concerning matters occurring before he was hypnotized. At retrial, Janik should only be allowed to testify to matters he was able to recall at the first trial prior to undergoing hypnosis.

Finally, the State contends that defendant has forfeited his sixth amendment right to confront Janik by having caused his

1-06-0475

unavailability. Under the doctrine of forfeiture by wrongdoing, a defendant waives his sixth amendment right to confront his accuser if he causes the witness's unavailability at trial. *Reynolds v. United States*, 98 U.S. 145, 25 L. Ed. 244 (1878); *Davis*, 547 U.S. at ____, 165 L. Ed. 2d at 244, 126 S. Ct. at 2280. We do not reach this final issue in light of our recommendation that we find Janik available for cross-examination.

Accordingly, we affirm the circuit court's order granting defendant's motion suppressing Janik's posthypnotic statements, we reverse the court's order granting defendant's motion *in limine* excluding Janik's out-of-court statements to responding police officers at the scene and in the ambulance, and we remand the cause for further proceedings consistent with this order.

Affirmed in part and reversed in part; cause remanded.

HOFFMAN and SOUTH, JJ., concur.