**In re William Richard CHADWICK, Lorraine Deanne Chadwick, Debtors.**

**Bankruptcy No. 89–42226–2.**

United States Bankruptcy Court,
W.D. Missouri.

April 24, 1990.

Stephen B. Strayer, Liberty, Mo., for debtors.

Paul E. Berman, Kansas City, Mo., trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtors owned a Missouri business, Chadwick Enterprises, Inc., but resided in Kansas. They had resided in Kansas for over six months when they filed for both corporate and joint personal bankruptcy protection. Both bankruptcy petitions were filed in the Western District of Missouri. Debtors possessed more property than most who seek the relief afforded by this Court. They claimed the benefits of the Kansas exemption statutes in their personal bankruptcy. The use of these exemptions makes a substantial difference in what property they may protect, or "exempt," because Kansas exemptions are

among the more liberal in the collective 50 states, while Missouri exemptions are much more restrictive.[1]

In any event, the debtors' personal petition for relief was filed jointly on October 4, 1989, claiming the above mentioned Kansas exemptions. Debtor William Richard Chadwick died on December 6, 1989. Subsequently, the Trustee raised several objections to debtors' exemptions. These objections were duly heard by this Court.

Before setting out the particular objections and the rulings thereon, one general rule needs to be set out. In the case of *Armstrong v. Peterson*, 897 F.2d 935, 937 (8th Cir.1990) the Eighth Court of Appeals ruled that

> [t]here is no doubt that the law as it exists on the date of filing determines a debtor's claimed exemptions. 11 U.S.C. § 522(b)(2)(A).

Determining exemptions based on the facts as they existed on the date of filing effectuates Rule 1016's decree that a debtor's death or insanity shall not influence the bankruptcy proceeding. *Peterson, supra,* at 938. Citing *In re Friedman*, 38 B.R. 275 (Bankr.E.D.Pa.1984); *see also White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) and *Mansell v. Carroll*, 379 F.2d 682 (10th Cir.1967).

In brief, the Trustee makes six general objections:

> 1) the value claimed as exempt includes a preferential payment of approximately $70,000.00 made by the Debtor's in September, 1989;
>
> 2) the goods claimed as household exemptions appear to be incorrectly valued and/or not fully disclosed;
>
> 3) the exempted jewelry exceeds the permitted $1,000.00 limit;
>
> 4) two automobiles claimed as exempt were purchased jointly in the names of debtors and their daughters, which allegedly constitutes a transfer to the daughters without consideration;
>
> 5) the joint exemption claimed in certain I.R.A.'s for $42,931.00 are objected to on

the grounds that they were overfunded, or in the alternative, that the I.R.A. exemption statute is void due to specific federal statutory preemption; and

> 6) the benefits paid to Mrs. Chadwick as beneficiary of her husband's life insurance policy are not exempt because the exemption was waived and the proceeds are now payable due to Mr. Chadwick's death;

## Analysis

■ *First objection:* The first objection by the Trustee goes to the debtor's claimed homestead exemption. Debtors' residence is worth $176,000.00. Some 30 days before filing, debtors paid $69,900.00 on the mortgage securing the debt on their house. The Trustee's evidence did not disclose from whence these funds had come. The Court presumes that the debtors converted non-exempt assets to prepay the mortgage and thus obtain the benefit of the maximum homestead exemption. Value is not the sine qua non in Kansas homestead exemptions, instead size is determinative. Debtors are entitled to one acre and all appurtenances if they live within an incorporated area.

This type of prefiling planning is universally permitted in respect to homesteads. *See In re Johnson*, 880 F.2d 78 (8th Cir. 1989) (setting forth the Eighth Circuit's approval of such activity). Further, Kansas courts, including both federal bankruptcy and state courts, have approved the procedure of "maximizing" the homestead exemption by paying down the mortgage with otherwise non-exempt funds. *See e.g. Barash v. Public Finance Corp.*, 658 F.2d 504 (1981). This point is ruled against the Trustee.

■ *Second objection:* The second objection by the Trustee to the exemptions claimed was set out as follows:

> (2) The Debtors' household goods appear to be incorrectly valued and/or not fully disclosed. Therefore to the extent that

---

**1.** It has been suggested by some observers that the more liberal exemptions are something of reward to those persons willing to reside in a state whose main claims to fame are the largest hand dug well in the United States and the second largest ball of twine in the country.

such items are not properly disclosed and are not reasonably necessary at the principal residence of the Debtors they are not exempt.

The Trustee offered no evidence at the hearing other than a financial statement dated August, 1988 which lists "personal property" at $15,000.00. Debtor Lorraine Chadwick testified as to the estimated market value of the household goods. She further testified that the $15,000.00 value was a replacement and insurance value. The Court believes that it is the market value that controls, although under Kansas exemption law the value seems to have little to do with the question. K.S.A. § 60–2304. Instead, it seems to cover all items of household furnishings reasonably necessary for continuation of the debtor's life style. Both state courts and federal bankruptcy courts have espoused this view. *In re Walsh*, 5 B.R. 239 (Bankr.D.Colo. 1980) *Nohinek v. Logsdon*, 6 Kan.App.2d 342, 628 P.2d 257 (1981). This point is ruled against the Trustee.

*Third Objection:* The third objection by the Trustee to the exemptions claimed was:

(3) The Debtors' personal property was disclosed in August, 1988 as having a value of $15,000.00. Until all of this property is sufficiently identified the Trustee objects to the exemption for all jewelry to the extent its true value exceeds $1,000.00.

The Trustee offered no evidence at the hearing except the August, 1988 financial statement. Debtor Lorraine Chadwick testified that she owns four rings and a necklace, which she was wearing as she testified. She further stated that in her opinion the estimated value of this jewelry was approximately $1,000.00. No one in attendance broke out a loupe, but the Court could tell that neither the Hope Diamond, nor a facsimile thereof, was involved. As the only evidence presented supported the $1,000.00 valuation, and since K.S.A. § 60–2304(b) allows exemption of $1,000.00 for such ornaments, this point is also ruled against the Trustee.

*Fourth objection:* The fourth objection by the Trustee was to two motor vehicles purchased by the debtors prior to bankruptcy. Debtor William R. Chadwick bought and paid for a 1989 Chrysler New Yorker, which he jointly titled in his own name, as well as his daughter's. Mr. Chadwick paid the entire $19,200.00 purchase price. Likewise, debtor Lorraine Chadwick purchased a 1989 Chrysler LeBaron for $19,400.00 just before bankruptcy. She paid the entire purchase price, and also created joint title with her daughter. The Trustee makes two objections to the claimed exemptions: a) an objection relating to the joint ownership issue; and 2) a claim that because the late Mr. Chadwick can no longer drive (being deceased) the vehicle cannot be claimed as an exemption "because he has no need for personal transportation."

■ The second prong of the Trustee's thrust is easily parried. The exemption is determined as of the date of filing and the fact that debtor William Chadwick died after filing is of no consequence in the process of determining his exemptions. *Armstrong v. Peterson, supra.*

■ The first portion of the Trustee's objection presents a more difficult problem. The Trustee here offers dual arguments in support of his challenge regarding the joint titles: 1) that the debtors can only exempt an undivided half interest in their automobiles under Kansas law; and 2) that the gift of a half interest in each car to their daughter constituted a "fraudulent transfer" which precludes the Chadwick's from exempting the daughter's half interest.

Under Kansas law, a debtor may normally exempt only their interest, not to exceed $20,000.00, in one means of conveyance that he or she regularly uses for transportation to and from work. K.S.A. § 60–2304(c). Thus, as a threshold issue, this Court must determine what interests were vested in each party when the cars were purchased and titled. If the vehicles were held as a joint tenancy with the right of survivorship, then, under Kansas law, each respective tenant held an undivided tenancy and the debtors would arguably be able to exempt the entire value of each automobile up to $20,000.00. If the Chad-

wick family members shared the vehicles as tenants in common, it is well settled law that each tenant owned a separate share of the estate and not the entirety. 20 Am. Jur.2d. *Cotenancy and Joint Ownership* § 26 et seq. As tenants in common, each debtor would only be able to exempt his or her individual share. The only evidence before the Court was the statement of counsel for the Trustee that the vehicles were "jointly titled," and the statement by counsel for the debtors that the debtors and their daughter were "jointly titled."

Kansas property law creates a presumption in favor of a tenancy in common, unless specific language of contrary exists in the grant:

K.S.A. § 58–501. **Tenancy in common unless joint tenancy intended, when; exception; joint tenancy provisions.**

Real or personal property granted or devised to two or more persons including a grant to a husband and wife shall create in them a tenancy in common with respect to such property, unless the language in such grant or devise makes it clear that a joint tenancy was intended to be created.

Neither the debtor nor the Trustee offered into evidence the "grant or devise" that created "joint title." Consequently, it is impossible to determine in the manner required, namely from the language of the title instrument, whether Mr. Chadwick intended to create a joint tenancy or a tenancy in common.

This Court is not convinced, however, that the lack of the title documents in any way affects its conclusion regarding the proportionate interest each debtor may exempt in the cars under Kansas law. The Bankruptcy Court concludes that the debtors are only entitled to protect their specific shares, severed from the whole, regardless of the nature of each respective tenancy. Even assuming that each respective tenancy was a joint tenancy with a right of survivorship, the filing of the petition in Bankruptcy operated to sever the debtors' proportionate interests from each whole, leaving a half interest for each debtor herein to exempt.

The logic of the bankruptcy court in *In re Panholzer*, 36 B.R. 647 (Bankr.D.Maryland 1984) provides clear instruction on the issue of severance. The *Panholzer* Court was called upon to decide what happens when a Chapter 7 debtor and another individual own real property as cotenants at the time of filing and the cotenant dies during the administration of the case. In settling that issue, the Court first examined the effect that filing has upon a joint tenancy owned by the debtor. Looking to Maryland law, the Court explained that a joint tenancy may be terminated or severed upon destruction of one or more of the four required unities of time, title, interest and possession. Under Maryland law, severance occurs upon the voluntary or involuntary conveyance of an interst of a tenant, as well as upon the levy or execution of a judgement lien against a joint tenant. Noting that the filing of a Chapter 7 "conveys" property to the Trustee, the Court reached the "inescapable" conclusion that filing severs a joint tenancy.

A Bankruptcy Court in the Land of Lincoln reached a similar conclusion in *In re Tyson*, 48 B.R. 412 (Bankr.C.D.Ill.1985). In that case, the Court held that a "conveyance" to the estate occurs even when a debtor is administering the estate as a debtor in possession under Chapter 11:

It is the [C]ourt's position that one of the debtor in possession's duties in this case is to hold, as property of the estate, any property in which the debtor in possession had a joint tenancy interest at the time the Chapter 11 petition was filed. *Cf.* Bankruptcy Code Section 1107(a).

*Tyson, supra* 48 B.R. at 414; *In re Lambert*, 34 B.R. 41 (Bankr.D.Colo.1983). *Cf. Matter of Van Kylen*, 98 B.R. 455 (Bankr. W.D.Wisc.1989) (effect of fraudulent conveyance action on a joint tenancy interest). *Contra, Matter of Spain*, 55 B.R. 849 (Bankr.N.D.Ala.1985); *In re Anthony*, 82 B.R. 386 (Bankr.W.D.Pa.1987). Once a joint tenancy is severed, each tenant is deemed to be the owner of a pro rata share of the estate as a tenant in common.

Under Kansas law, the conveyance of a share of the whole by a joint tenant results

in the severance or termination of the joint tenancy. *Hall v. Hamilton,* 233 Kan. 880, 667 P.2d 350 (1983); *Berry v. Berry's Estate,* 168 Kan. 253, 212 P.2d 283 (1949). Therefore, the only interests the Chadwicks were legally capable of owning upon filing bankruptcy, and in essence "conveying" their property to the estate, were in common tenancies. Consequently, Mr. Chadwick's estate is entitled to exempt his undivided half interest in the New Yorker, while Mrs. Chadwick is entitled to protect her similar half interest in the Chrysler LeBaron.

It should be noted, however, that this Court offers no opinion as to whether the transactions wherein the above joint titles were created constitute fraudulent conveyances. This Court did not need to reach that issue in sustaining the Trustee's objection to the above exemptions. Any discussion of that issue would amount to an inappropriate advisory opinion from this Court regarding that issue, or would constitute unbinding dicta.

*Fifth Objection:* The Trustee's fifth objection is directed at some $42,931.00 which debtors listed as the balance of specific I.R.A. accounts. The Trustee attacks on two grounds: first, the Trustee contends that the Kansas exemption statute has been preempted by federal law, *citing Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); second, the Trustee contends that the I.R.A.'s must have been "overfunded" (i.e. the debtors invested more than the required $2,000.00 per year) because of their present value.

The Trustee presented no evidence at trial, or elsewhere, of any alleged "overfunding." In addition, debtor Lorraine Chadwick testified that the I.R.A.'s were never "overfunded." The Court agrees that the increase has been prodigious. However, the Court cannot, as a matter of law, say that the I.R.A.'s were overfunded. Therefore, the Trustee will have to fail or succeed on the preemption issue.

■ The Trustee claims that Kansas law which specifically exempts I.R.A.'s from attachment, execution and garnishment [2] is preempted by the federal Employment Retirement Income Security Act (ERISA). The linchpin of the Trustee's argument is the recent Supreme Court case of *Mackey v. Lanier Collections Agency & Service, Inc., supra.* In *Mackey,* the Supreme Court was faced with the issue of whether a Georgia state statute that protected ERISA benefits from garnishment was preempted by ERISA. In *Mackey,* Justice White concluded that ERISA § 514(a) preempts any and all State laws that relate to, or may relate to, any employment benefit plan covered by the statute. 29 U.S.C. § 1144(a), *Mackey, supra* 486 U.S. 825, 108 S.Ct. at 2185. Insofar as the Georgia statute specifically exempted ERISA plans from garnishment, its direct relationship to the federal ERISA statute mandated preemption. If any general preemption principle can be gleaned from *Mackey,* it is this: a state law relates to an employee benefit plan, and is thus preempted, if it has a connection with or reference to an ERISA plan. *Mackey, supra. See also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

The specific preemptive language of ERISA states that the statute supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of ERISA." In part, that subsection provides the following:

---

2. K.S.A. § 60–2308. **Pension and retirement money exempt, exemption.**

(a)....

(b) Except as provided in subsection (c), any money, or other assets payable to a participant or beneficiary from, or any interest or any participant or beneficiary in, a retirement plan which is qualified under section 401(a), 403(a), 403(b), 408 or 409 of the federal internal revenue code of 1954, as amended, shall be exempt from any and all claims of creditors of the beneficiary or participant. Any such plan shall be conclusively presumed to be a spendthrift trust under these statutes and the common law of the state. All records of the debtor concerning such plan or arrangement and of the plan concerning the debtor's participation in the plan or arrangement shall be exempt from the subpoena process.

[T]his subchapter shall apply to any employee benefit plan if it is established or maintained—

(1) by an employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

The Trustee takes the position that the Kansas exemption provisions are preempted by ERISA.

This Court is of the opinion, however, that the plain language of ERISA regulations exclude IRA's from ERISA coverage:

(d) **Individual Retirement Accounts.** For purposes of Title I of the Act [ERISA] and this Chapter, the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account described in section 408(a) of the Code [Internal Revenue Code of 1954], an individual retirement annuity described in section 408(b) of the Internal Revenue Code of 1954 (hereinafter "the Code") and an individual retirement bond described in Section 409 of the Code.

29 C.F.R. 2510.3–2(d)(1). *Accord In re Laxson,* 102 B.R. 85 (Bankr.N.D.Tex.1989); *In re Martin,* 102 B.R. 639 (Bankr.E.D. Tenn.1989). Thus, the objection to the debtor's I.R.A. exemption based on federal preemption is denied.

In passing, this Court notes that the Trustee's "Suggestions in Support of Trustee's Objections to Debtor's Exemptions" asserts that the I.R.A.'s are not exempt because the I.R.S. requires that they be distributed after Mr. Chadwick's death.

In addition to being vaguely pleaded, this argument was never specifically raised as an objection nor added as an amendment to the Trustee's properly filed litany of objections. Further, no arguments in support of this line of reasoning were raised at trial. Thus, the Trustee failed to both properly plead this ground and to support it to the degree required as his burden of proof. The objection to the I.R.A. exemption on this ground is therefore denied.

*Sixth objection:* Finally, the Trustee makes two challenges to Mrs. Chadwick's claimed exemption in the proceeds of her husband's life insurance policy. First, the Trustee alleges that Mrs. Chadwick waived her prerogative to exempt the benefits of her husband's life insurance policy.[3] The Trustee offered no evidence or arguments of law in support of any "waiver" argument. Therefore, the Trustee's objection to the exemption of the insurance benefits based on waiver is denied for lack of proof.

■ The Trustee also claims that the Kansas statute that speaks of exemptions related to life insurance policies does not extend to cover insurance benefits, but merely protects the cash value of such policies. In part, that statute provides the following:

K.S.A. 40–414. **Exemption of interests in policies; exemptions.** (a) If a life insurance company or fraternal benefit society issues any policy of insurance or beneficiary certificates upon the life of an individual and payable at the death of the insured, or in any given number of years, to any person or persons having an insurable interest in the life of the insured, *the policy and its reserves, or their present value,* shall inure to the

---

**3.** The Court notes again that in his "Suggestions in Support," the Trustee raised a claim that the Kansas statute that exempts life insurance policies from attachment does not protect the proceeds of such policies. While this claim was argued at trial, the Trustee never formally amended his objection to the Debtor's exemption to include this line of reasoning. The Court is wont to preclude consideration of this claim for failure to bring it in an appropriate manner. The laws that govern pleadings and amendments are fundamental rules, rules that are vital to ensure fairness in our adversarial system of law. *Cf.* Bankruptcy Rule 7015, 11 U.S.C.; Fed.R.Civ.P. 15, 28 U.S.C. Such laws are designed to avoid prejudice and ensure that a person has been given timely notice sufficient to fully defend any and all claims brought by his or her adversary. However, the Court's judgement of this claim lies in favor of the debtor. Therefore, the reasoning in support of this Court's rejection of this claim is discussed above.

sole and separate use and benefit of the beneficiaries named in the policy and *shall be free from:*

(1) The claims of the insured or the insured's creditors and representatives; . . . .

(2) . . . ;

(3) . . . ; and

(4) *the claims and judgements of the creditors and representatives of any person named as beneficiary in the policy of insurance* (emphasis added).

Though not defined in the statute, the common meaning of the term "reserve" or "reserves" is broad enough to include the benefits of the policy. The "reserve" of a policy can be defined as "money or its equivalent kept in hand or set apart usually to meet liabilities," or "something stored or kept available for future use or need." Webster's Ninth New Collegiate Dictionary (1986). Certainly the proceeds of the policy are part of the "reserve" held for future use by the beneficiaries and are therefore exempt under Kansas law.

This point-of-view in shared by the Bankruptcy Court for the District of Kansas. In *In re Douglas*, 59 B.R. 836 (Bankr.D. Kan.1986) that Court held that under prior interpretations of the "Act to Exempt the Proceeds of Life Insurance Policies", as well as under relevant rules of statutory construction, K.S.A. § 40–414 operates to protect life insurance proceeds payable to the debtor as beneficiary. The Trustee's objection to the exemption claimed in the insurance proceeds is DENIED.

### Conclusion

Based on the foregoing, the Trustee's objections to the Debtors' claimed exemptions are hereby DENIED except as to the undivided one-half interests in the two motor vehicles. Debtors and their counsel have done an effective and efficient job in maximizing exemptions and it is probably most vexing to creditors to see Mrs. Chadwick depart the Bankruptcy Court with substantial assets. That, of course, is a consequence of lending to a resident of a state with liberal exemptions and such is-

sues are properly addressed to the legislature rather than the courts.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052, Rules of Bankruptcy.

SO ORDERED.