FIRST DIVISION

September 20, 2010

No. 1-09-0583

LOUIS MANIEZ,                                    )
Appeal from the
                                                 )
Circuit Court of
        Plaintiff-Appellant,                     ) Cook
County.
                                                 )

        v.                                       )
                                                 )

CITIBANK, F.S.B., HARBOR DRIVE                   )
CONDOMINIUM ASSOCIATION,                         ) No.
05 CH 20618
UNKNOWN OWNERS and NONRECORD                     )
CLAIMANTS,                                       )
                                                 )

        Defendants                               )
Honorable
                                                 )

Darryl B. Simko,
(Masayo Koshiyama and Robert                     )
Judge Presiding.
Jolly,                                           )

)

Defendants-Appellees). )

PRESIDING JUSTICE HALL delivered the opinion of the court:

This is the second appeal generated by the efforts of the plaintiff, Louis Maniez, to prevail on his complaint to foreclose a judgment lien against the defendants, Masayo Koshiyama and her husband, Robert Jolly. In answer to a certified question, this court held that a 1997 memorandum of judgment recorded by the plaintiff did not create a valid lien

against the defendants' real property. See <u>Maniez v. Citibank, F.S.B.</u>, 383 Ill. App. 3d 38, 890 N.E.2d 662 (2008).

On remand, the circuit court granted the defendants' motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) (the Code). The plaintiff appeals, raising the following issues: (1) whether the doctrines of judicial estoppel and equitable estoppel bar Ms. Koshiyama from asserting the

invalidity of the plaintiff's 1997 judgment lien; (2) whether the plaintiff's 2004 memorandum of judgment created a valid judgment lien that is binding on the Jolly estate;[1] and (3) whether this court's prior decision in Maniez should be overruled under the exceptions to the law of the case doctrine.

Our prior opinion was limited to answering the certified question.  The issues presented in this appeal require a more detailed history of

---

[1]Defendant Robert Jolly died during the pendency of the original circuit court proceedings.

this litigation.

BACKGROUND

I. Circuit Court Proceedings

In 1993, the plaintiff, Louis Maniez, and the defendants entered into a settlement agreement to resolve pending litigation.  The order entered by the circuit court provided that Ms. Koshiyama was to make certain payments to the plaintiff.  In the event she failed to make the payments, a default judgment would be entered against both defendants for the remaining balance.  Ms. Koshiyama failed to make the

payments, and on February 28, 1997, the plaintiff obtained a default judgment against the defendants in the amount of $110,348.83, plus statutory interest.  It is undisputed that a memorandum of judgment was recorded on February 28, 1997, and that the memorandum specified the judgment date as February 27, 1997, rather than February 28, 1997, the actual date of the judgment.

On February 6, 1998, Ms. Koshiyama filed for bankruptcy.  On her Schedule A - Real Property, she

listed a 50% interest in a condominium unit at 155 Harbor Drive, Chicago, Illinois (the Harbor Drive Unit), which she owned in joint tenancy with Mr. Jolly.  On her Schedule D - Creditors Holding Secured Claims, she listed the plaintiff and described his claim as a "Judicial Lien" against the Harbor Drive Unit.  She listed the value of the property as $550,000 and the amount of the plaintiff's claim as $110,348.83.  She did not indicate on the schedule that the plaintiff's claim was disputed.

On February 25, 2004, the circuit court granted the plaintiff's motion to revive his judgment against the defendants.  The order specified the correct judgment date of February 28, 1997, and provided that the judgment was revived against both defendants.  However, as to Ms. Koshiyama, it was "limited to in rem effect and only as to real estate owned by Masayo Koshiyama at the time she filed her bankruptcy proceedings."  Based on the revived judgment, the plaintiff recorded a memorandum of judgment on

8

February 26, 2004.    However, the memorandum stated the year of the judgment as 1998 rather 1997, the correct year of the judgment.

Ms. Koshiyama's bankruptcy case was closed on January 21, 2005.  On October 24, 2005, the plaintiff recorded the circuit court's February 25, 2004, order reviving the judgment and which specified the correct judgment date of February 28, 1997.

On December 1, 2005, the plaintiff filed the instant foreclosure complaint against the defendants.  The defendants filed a

motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2006)).  The defendants alleged that the 1997 memorandum of judgment did not create a judgment lien on the Harbor Drive Unit because the memorandum referred to the judgment as having been entered on February 27, 1997, whereas the judgment was entered on February 28, 1997.

Defendant Robert Jolly died on June 21, 2006.[2]   On October 19, 2006,

_____

[2]Hereinafter, the word "defendants" refers to Ms. Koshiyama

the circuit court granted the plaintiff's motion to amend the complaint to add Ms. Koshiyama, as executrix of Mr. Jolly's estate, as a party defendant.  The court entered an order denying the defendants' motion to dismiss.  On December 13, 2006, the court modified its order by certifying the following question to this court:

"'[w]hether a Memorandum of Judgment inaccurately describing a judgment as having been entered on a specific date can serve to create

and the Jolly estate.

a lien as provided by the relevant statute.'" Maniez, 383 Ill. App. 3d at 39.

This court allowed the appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

II.  Appellate Court Proceedings

In answer to the certified question, this court held that a memorandum of judgment inaccurately describing a judgment as having been entered on a specific date did not create a lien under section 12-101 of the Code.  Maniez, 383 Ill. App. 3d at

45.   In reaching that conclusion, the court noted that under section 12-101, a judgment was a lien on real estate only from the time the memorandum of judgment was filed in the recorder's office.   See 735 ILCS 5/12-101 (West 2002).   However, there must also be an enforceable judgment standing behind the memorandum.   Maniez, 383 Ill. App. 3d at 41, citing Northwest Diversified, Inc. v. Desai, 353 Ill. App. 3d 378, 388, 818 N.E.2d 753 (2004).

        The plaintiff argued that the

memorandum was a notice document and pointed out that the defendants never denied that a judgment was entered on February 28, 1997.  While the plaintiff did not dispute the fact that the memorandum of judgment contained the wrong judgment date, he maintained that the mistake was merely a scrivener's error.

This court rejected the plaintiff's arguments.  The court pointed out that the memorandum gave notice to prospective purchasers as well as the debtor.  The memorandum

14

setting forth February 27, 1997, as the date of the judgment did not place a prospective purchaser on notice that a judgment had been entered on February 28, 1997.  Maniez, 383 Ill. App. 3d at 43.  The plaintiff's scrivener's error argument lacked merit because case law required strict compliance with section 12-101.  Maniez, 383 Ill. App. 3d at 44, citing Northwest Diversified, Inc., 353 Ill. App. 3d at 391.  Even if the wrong date was a scrivener's error, no judgment was entered on February 28,

15

1997.  Without a judgment on that date, the 1997 memorandum referred to a nonexistent judgment; therefore, it did not create a judgment lien against the defendants' real property. Maniez, 383 Ill. App. 3d at 44.

Having answered the certified question, this court declined the defendants' request to go beyond the certified question and dismiss the complaint on the basis that the 2004 revival of the judgment lien was a nullity.  The case was remanded to the circuit court.  Maniez, 383 Ill. App.

16

3d at 44-45.  The plaintiff did not seek leave to appeal to the supreme court.

III. Circuit Court Proceedings on Remand

Upon remand to the circuit court, the defendants moved to  dismiss the foreclosure complaint based on this court's determination in <u>Maniez</u> that no lien was created.  They alleged that, as no subsequent lien could have been created due to Ms. Koshiyama's discharge of the debt in bankruptcy, the complaint should be dismissed with

prejudice.  The defendants alleged further that, even if the 2004 memorandum created a valid lien, it impaired Ms. Koshiyama's survivorship rights, rendering the lien void under the automatic stay issued in her bankruptcy case.

In his response to the motion to dismiss, the plaintiff maintained that Ms. Koshiyama was barred by judicial and equitable estoppel from asserting that he did not have a valid lien against her interest in the Harbor Drive Unit.  The plaintiff further

argued that, even if the 1997 memorandum was invalid, the 2004 memorandum created a valid lien against the Jolly estate's half interest in the Harbor Drive Unit because Ms. Koshiyama's and Mr. Jolly's joint tenancy ownership of the Harbor Drive Unit was severed when Ms. Koshiyama filed her bankruptcy petition.

On January 27, 2009, the circuit court granted the defendants' motion to dismiss.  The plaintiff filed a timely notice of appeal.

ANALYSIS

I. Dismissal of the Foreclosure Complaint

A.  Standard of Review

This court reviews the dismissal of a complaint under section 2-619 de novo.  Westmeyer v. Flynn, 382 Ill. App. 3d 952, 954-55, 889 N.E.2d 671 (2008).  Review of an appeal from a section 2-619 dismissal is similar to the review of an appeal from the grant of summary judgment.  Westmeyer, 382 Ill. App. 3d at 955.  The court considers whether a genuine issue of

material fact exists that would preclude the dismissal, or whether the dismissal is proper as a matter of law.  <u>Westmeyer</u>, 382 Ill. App. 3d at 955.

## B. <u>Discussion</u>

### 1. Judicial and Equitable Estoppel

The plaintiff contends that Ms. Koshiyama is judicially and equitably estopped from contesting the validity of his 1997 judgment lien because she listed the plaintiff as a secured creditor on her bankruptcy schedule.[3]

_____

[3]The plaintiff acknowledges that his

The plaintiff argues that judicial estoppel applies because, in the foreclosure case, Ms. Koshiyama took a position that conflicted with the position she took in her bankruptcy case.  He further argues that equitable estoppel applies because the scheduling of the lien in her bankruptcy case caused the plaintiff to refrain from asserting rights he might otherwise have asserted in the bankruptcy proceeding.

estoppel arguments do not apply to the Jolly estate.

## a. <u>Waiver and Forfeiture</u>

The defendants respond that the plaintiff has either waived or forfeited his right to raise judicial estoppel.[4] They point out that in their original motion to dismiss, they raised the validity of the judgment lien, but the plaintiff failed to argue judicial estoppel, either in the original circuit court proceedings or in the Rule 308 appeal to this court.

"Waiver" means the voluntary

---

[4]The defendants do not specifically address equitable estoppel in their waiver and forfeiture arguments.

23

relinquishment of a known right. People v. Blair, 215 Ill. 2d 427, 444 n.2, 831 N.E.2d 604 (2005). Waiver arises from an affirmative act, is consensual and consists of an intentional relinquishment of a known right. People v. Houston, 229 Ill. 2d 1, 9 n.3, 890 N.E.2d 424 (2008). Forfeiture occurs when a party seeks to raise an issue on appeal it failed to raise in the lower court. Blair, 215 Ill. 2d at 443-44. Notwithstanding the distinction between "waiver" and "forfeiture,"

neither applies in this case.

Contrary to the defendants' argument, the plaintiff was not required to raise judicial estoppel as a defense to the defendants' motion to dismiss.  Section 2-613 of the Code requires that affirmative defenses, such as estoppel, must be raised in the answer to the complaint or in the reply to the answer.  See 735 ILCS 5/2-613(d) (West 2008).  In R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co., 358 Ill. App. 3d 912, 921, 832 N.E.2d 246

(2005), this court held that an affirmative defense is properly asserted in a section 2-615 motion to dismiss only if the defense is apparent from the face of the complaint.  R&B Kapital Development, LLC, 358 Ill. App. 3d at 921.  The court did not hold that the defendant was required to raise the affirmative defense in the motion to dismiss.  Therefore, the plaintiff has not intentionally relinquished his right to raise the defense of judicial estoppel.

Similarly, the plaintiff did not forfeit his right to raise judicial estoppel in the present proceedings by not raising it in the prior proceedings.  The circuit court denied the defendants' motion to dismiss, rejecting the defendants' argument challenging the validity of the plaintiff's lien.  Due to the intervening Rule 308 appeal, and the filing of their motion to dismiss after remand to the circuit court, the defendants had not yet answered the complaint.  Only then would the

27

plaintiff be required to file a reply, if he wished to raise any estoppel defenses.

Finally, the principles of waiver and forfeiture are binding on the parties but do not limit this court's jurisdiction. See People v. McCarty, 223 Ill. 2d 109, 142, 858 N.E.2d 15 (2006); Redelmann v. K.A. Steel Chemicals, Inc., 377 Ill. App. 3d 971, 879 N.E.2d 505 (2007). We turn to the merits of the plaintiff's estoppel arguments.

b. Judicial Estoppel

Under the doctrine of judicial estoppel, a party who takes a particular position in a legal proceeding is estopped from taking a contrary position in a subsequent legal proceeding.  Moy v. Ng, 371 Ill. App. 3d 957, 962, 864 N.E.2d 752 (2007).  Our courts have identified five elements necessary for judicial estoppel to apply: (1) the party must have taken two positions; (2) the positions must be factually inconsistent; (3) the positions were taken in separate judicial or quasi-

judicial proceedings; (4) the person intended the trier of fact to accept the truth of the facts alleged; and (5) the party succeeded in the first proceeding and received some benefit therefrom. Moy, 371 Ill. App. 3d at 962. Judicial estoppel applies to statements of fact and not to legal opinions or conclusions. McNamee v. Sandore, 373 Ill. App. 3d 636, 650, 869 N.E.2d 1102 (2007).[5]

_____

[5]While Johnson v. Du Page Airport Authority, 268 Ill. App. 3d 409, 644 N.E.2d 802 (1994), extended judicial estoppel to legal inconsistencies, the supreme court's decision in People v. Jones, 223 Ill. 2d 569, 861 N.E.2d 967 (2006), restored the understanding of judicial estoppel as barring factual

In the present case, Ms. Koshiyama disclosed the existence of the plaintiff's judgment lien in her bankruptcy case.  She later contested the validity of the lien in the instant proceedings when the plaintiff sought to foreclose it.  The listing of the claim was a statement of fact.  By challenging the validity of the lien, she was not denying the fact that the plaintiff had recorded a memorandum of judgment against the

---

inconsistencies, not legal inconsistencies.  McNamee, 373 Ill. App. 3d at 650.

31

Harbor Drive Unit. The plaintiff points out that Ms. Koshiyama failed to indicate on her bankruptcy schedule that the lien claim was disputed. However, there is no evidence that the lien claim was the subject of a dispute at the time the schedule was filed. Therefore, Ms. Koshiyama did not take a position in the foreclosure case factually inconsistent with the one she took in her bankruptcy case.

### c. Equitable Estoppel

"Equitable estoppel is typically invoked 'where a person by his or her

statements and conduct leads a party to do something that the party would not have done but for such statements and conduct.'"  Trossman v. Philipsborn, 373 Ill. App. 3d 1020, 1040, 869 N.E.2d 1147 (2007), quoting Geddes v. Mill Creek Country Club, Inc., 196 Ill. 2d 302, 313, 751 N.E.2d 1150 (2001).  Our supreme court has defined equitable estoppel "as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who,

33

in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." Geddes, 196 Ill. 2d at 313.

In order to establish equitable estoppel, the party claiming it must demonstrate: (1) that the other party misrepresented or concealed material facts; (2) that the other party knew at the time that he or she made the representations that they were untrue; (3) that the party claiming estoppel did not know that the representations were untrue when they were made and

when they were acted upon; (4) that the other person intended the party claiming estoppel would act upon the representations; (5) that the party claiming estoppel reasonably relied on the representations to his or her detriment; and (6) that the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person were allowed to deny the truth thereof. Geddes, 196 Ill. 2d at 313-14. The "fraud element" may be satisfied where a fraudulent or unjust

effect results from allowing another person to raise a claim inconsistent with his or her former declarations. Geddes, 196 Ill. 2d at 314.

The party claiming estoppel has the burden of proving it by clear and unequivocal evidence. Geddes, 196 Ill. App. 3d at 314. Whether estoppel has been established is dependant on the facts of each case. Geddes, 196 Ill. 2d at 314.

The plaintiff maintains that he relied to his detriment on Ms. Koshiyama's representation in her

bankruptcy proceeding that he had a judgment lien against the Harbor Drive Unit.  The plaintiff alleges that, had Ms. Koshiyama's 50% interest in the Harbor Drive Unit been liquidated, the unsecured creditors would have received an $80,000 distribution from her bankruptcy estate, rather then the $15,000 actual distribution.  He further alleges that since Ms. Koshiyama listed him as a secured creditor, he was unable to file an unsecured claim, which would have allowed him to participate in the

$15,000 distribution.

There is no evidence that at the time she filed her bankruptcy petition in 1998, Ms. Koshiyama knew that the plaintiff's judgment lien was invalid and concealed that fact from the plaintiff.  The plaintiff could not claim that he reasonably relied on the bankruptcy filing because he possessed the same knowledge regarding the date of the judgment and the date on the memorandum of judgment that he attributed to Ms. Koshiyama.  In other words, if Ms. Koshiyama knew at the

time she filed for bankruptcy that the plaintiff's lien was invalid, so did the plaintiff because the basis of their knowledge was the same.

The plaintiff argues that estoppel may be based on a failure to disclose when coupled with an affirmative statement or act, misleading the party asserting estoppel. Estoppel by silence may arise only where there is knowledge of the facts on one side and ignorance on the other. In <u>Town & Country Bank of Springfield v. James M. Canfield</u>

<u>Contracting Co.</u>, 55 Ill. App. 3d 91, 370 N.E.2d 630 (1977), the court explained:

> "'[I]f the means of knowledge are equally open to both parties, there can be no estoppel. ***
>
> A person is not estopped by his silence where there is no positive duty and opportunity to speak, or the

party is in ignorance of his rights.' " Town & Country Bank of Springfield, 55 Ill. App. 3d at 95,

quoting Puterbaugh, Chancery Pleading & Practice §675, at 1372 (7th ed. 1930).

In this case, both the plaintiff and Ms. Koshiyama were ignorant of the fact that the 1997 judgment lien was

invalid at the time of the bankruptcy proceedings.

The plaintiff cites <u>Bianucci v. Prairie Production Credit Ass'n</u>, No. 92-3046 (C.D. Ill. August 21, 1992) (not reported in F. Supp.), <u>aff'd</u> <u>sub nom</u> <u>In re Bianucci</u>, 4 F.3d 526 (7th Cir. 1993), and <u>In re Elmes</u>, 289 B.R. 100 (Bankr. N.D. Ill. 2003). In <u>Bianucci</u>, the district court ruled that the debtors waited too long before moving to reopen their bankruptcy to discharge a judgment lien they failed to list in their

bankruptcy proceedings.  In <u>Elmes</u>, the court held that a lien holder did not violate the debtors' bankruptcy discharge by filing contempt action in state court against them to enforce a lien.  However, the court then held that the debtors could properly avoid the lien, rejecting the lienholder's argument that the debtors had waited too long before moving to avoid the lien.  Neither the facts nor the holdings in those cases support the plaintiff's estoppel arguments.

We conclude that neither judicial

estoppel nor equitable estoppel barred Ms. Koshiyama from asserting that the plaintiff's 1997 judgment lien was invalid.

 2. Validity of the 2004 Judgment Lien Against

the Jolly Estate

The plaintiff maintains that the 2004 memorandum created a valid lien, enforceable against the Jolly estate. The defendants respond that the 2004 memorandum was void because it violated the automatic stay order entered in Ms. Koshiyama's bankruptcy

45

case by interfering with her right of survivorship in the Harbor Drive Unit. See In re Berg, 387 B.R. 524, 564 (Bankr. N.D. Ill. 2008); but see In re Lipuma, 167 B.R. 522 (Bankr. N.D. Ill. 1994) (recognizing a split of authority among the federal circuits as to whether an act violating an automatic stay was void or voidable).

At oral argument of this case, counsel for the defendants pointed out that the 2004 memorandum specified the wrong year, 1998 instead of 1997. Therefore, under Maniez, as the 2004

memorandum failed to comply with the requirements of section 12-101, it failed to create a valid lien. However, following the close of Ms. Koshiyama's bankruptcy case, the plaintiff recorded the order reviving the judgment. The order contained the correct date of the judgment, and under section 12-101, the order qualified as a memorandum of judgment. See <u>Maniez</u>, 383 Ill. App. 3d at 40-41; 735 ILCS 5/12-101 (West 2004).[6]

---

[6]Under section 12-101, a memorandum includes a copy of the judgment "signed by a judge." 735 ILCS 5/12-101(d) (West 2004). We note that, while it contains the information required by

Therefore, while the 2004 memorandum was void, the October 24, 2005, recording of the court order reviving the judgment created a valid lien and did not violate the automatic stay because it was filed after the close of Ms. Koshiyama's bankruptcy case.

The defendants then argue that,

---

section 12-101, the October 24, 2005, order does not bear the judge's signature.  However, the order is stamped with the judge's name and the date.  As this court has recognized, "the law has consistently interpreted 'signed' to embody not only the act of subscribing a document, but also anything which can reasonably be understood to symbolize or manifest the signer's intent to adopt a writing as his or her own and be bound by it. This may be accomplished in a multitude of ways, only one of which is a handwritten subscription."  Just Pants v. Wagner, 247 Ill. App. 3d 166, 173-74, 617 N.E.2d 246 (1993).

even if the plaintiff had a valid judgment lien against the Harbor Drive Unit that he could enforce against Mr. Jolly, upon Mr. Jolly's death, the lien was not enforceable against Ms. Koshiyama, the surviving joint tenant. In <u>Harms v. Sprague</u>, 105 Ill. 2d 215, 473 N.E.2d 930 (1984), the supreme court held that a mortgage executed by one joint tenant did not survive as a lien on the property upon the death of the joint tenant/mortgagor.  The court explained as follows:

"A surviving joint tenant succeeds

to the share of the deceased joint tenant by virtue of the conveyance which created the joint tenancy, not as the successor of the deceased. [Citation.]  The property right of the mortgaging joint tenant is extinguished at the moment of his death.  While John Harms was alive, the mortgage existed as a lien on his interest in the joint tenancy.  Upon his death, his interest ceased to exist and along with it the lien of the mortgage."  <u>Harms</u>, 105 Ill. 2d at

224.

In the present case, the plaintiff's judgment against Ms. Koshiyama was discharged in bankruptcy.  While Mr. Jolly was alive, the plaintiff had a judgment lien against Mr. Jolly's interest in the joint tenancy, as of October 24, 2005, when the court order reviving the judgment was recorded.  As in Harms, when Mr. Jolly died in 2006, his interest ceased to exist, and Ms. Koshiyama, as the surviving joint tenant, took the property free of the

plaintiff's judgment lien.

The plaintiff then asserts that the judgment lien survived the death of Mr. Jolly because the filing of the bankruptcy petition severed the joint tenancy and rendered Ms. Koshiyama and Mr. Jolly tenants-in-common. Therefore, the judgment lien remained on Mr. Jolly's undivided one-half interest in the Harbor Drive Unit because it passed to Ms. Koshiyama by inheritance, not as the surviving joint tenant. In order to resolve whether the plaintiff's judgment

remained a lien on the Harbor Drive Unit upon Mr. Jolly's death, we must determine if the filing of a petition in bankruptcy severs the joint tenancy

There is a split of authority among the courts on this issue. Some federal and state courts have concluded that the filing of a bankruptcy petition severs the joint tenancy. See Taylor v. Canterbury, 92 P.3d 961 (Colo. 2004); In re Chadwick, 113 B.R. 540 (Bankr. W.D. Mo. 1990); In re Tyson, 48 B.R. 412 (Bankr. C.D. Ill. 1985); In re Panholzer, 36 B.R.

647 (Bankr. D. Md. 1984); <u>In re</u>

<u>Lambert</u>, 34 B.R. 41 (Bankr. D. Colo.

1983). Other courts have found that

the filing of the petition does not

sever the joint tenancy. See <u>In re</u>

<u>DeMarco</u>, 114 B.R. 121 (Bankr. N.D. W.

Va. 1990); <u>In re Anthony</u>, 82 B.R. 386

(Bankr. W.D. Pa. 1987); <u>In re Spain</u>,

55 B.R. 849 (N.D. Ala. 1985).

The Bankruptcy Code (11 U.S.C. §

101 <u>et</u> <u>seq.</u> (2006)) does not address

specifically whether the filing of a

petition in bankruptcy severs the

joint tenancy. The courts in the

54

above cases arrived at their conclusions by analyzing the provisions of the Bankruptcy Code in light of their own state laws governing property interests.  See Lambert, 34 B.R. at 42 (state law determines the nature, extent and effect of the debtor's interest in property).  We examine first the interest of a joint tenant under Illinois law.

   a. Property Interests Under Illinois Joint Tenancy Law

        A joint tenancy is "'a present

estate in all the joint tenants, each being seized of the whole.'" <u>Harms</u>, 105 Ill. 2d at 224, quoting <u>Partridge v. Berliner</u>, 325 Ill. 253, 257, 156 N.E.2d 352 (1927). An inherent feature in the estate of joint tenancy is the right of survivorship, which is the right of the last survivor to take the whole of the estate. <u>Harms</u>, 105 Ill. 2d at 224. The creation and the perpetuation of the joint tenancy are dependent on four unities: interest, title, time, and possession. <u>Harms</u>, 105 Ill. 2d at 220. The voluntary or

involuntary destruction of any of the unities by one of the joint tenants will sever the joint tenancy. <u>Harms</u>, 105 Ill. 2d at 220. The severance of the joint tenancy extinguishes the right of survivorship. <u>Jackson v. O'Connell</u>, 23 Ill. 2d 52, 55, 177 N.E.2d 194 (1961).

Illinois courts have held that a joint tenant can sever a joint tenancy by conveying his or her interest to a third party, even without the consent or permission of the other joint tenant. See <u>Olney Trust Bank v.</u>

Pitts, 200 Ill. App. 3d 917, 921, 558 N.E.2d 398 (1990), citing Johnson v. Beneficial Finance Co. of Illinois, Inc., 154 Ill. App. 3d 672, 674, 506 N.E.2d 1025 (1987), and Johnson v. Johnson, 11 Ill. App. 3d 681, 684, 297 N.E.2d 285 (1973). In Olney Trust Bank, the court held that the joint tenancy was severed where one joint tenant conveyed his interest by way of a deed in lieu of foreclosure. Olney Trust Bank, 200 Ill. App. 3d at 921.

Our courts have held that a lien or a mortgage on a joint tenant's

interest does not sever the joint tenancy. See <u>Harms</u>, 105 Ill. 2d at 223; <u>Jackson v. Lacey</u>, 408 Ill. 530, 97 N.E.2d 839 (1951); <u>Van Antwerp v. Horan</u>, 390 Ill. 449, 61 N.E.2d 358 (1945). Even the making of a levy upon a joint tenant's interest does not sever the joint tenancy. As the court in <u>Van Antwerp</u> explained:

> "Under the law and procedure in this State, it appears that the levy is just another

step in the process directed toward a final sale. It is, however, not such an act as can be said to have

the effect of a divestiture of title. There has not been, as yet, the destruction of identity of

interest or of any other unity which must occur before we can say the estate of joint tenancy

has been severed and destroyed. There does not appear to have been, by reason of the levy, such

interference with, or diminution of, the interest of the one joint tenant as to enable us to

say that there has been a destruction of the identity of interest; and such a destruction is

necessary before we can say that there has been a termination and severance of the joint tenancy. We

therefore hold that the levy of the execution upon the share of one of the joint tenants does not

sever or terminate the joint tenancy." *Van Antwerp*, 390 Ill. at 455.

In *Jackson*, the court held that, even though there had been a sale of the joint tenant's interest, there was no conveyance until the period of redemption had passed. The court

concluded that the title was not divested and, therefore, the joint tenancy was unaltered.  <u>Jackson</u>, 408 Ill. at 533.

We conclude that Illinois requires a conveyance of the joint tenant's interest in the property to sever a joint tenancy.  We now turn to the relevant sections of the Bankruptcy Code to determine if the filing of a petition in bankruptcy constitutes a conveyance of the debtor/joint tenant's interest in the property.

b. <u>The Bankruptcy Code</u>

Prior to the reforms to bankruptcy law in the late 1970s, section 70a of the Bankruptcy Act (11 U.S.C. §70a (1976)) provided that the bankruptcy trustee was vested with the title of the debtor to all his or her nonexempted property as of the date of the filing of the bankruptcy petition. <u>Spain</u>, 55 B.R. at 852; 4A Collier on Bankruptcy §70, at 60 (14th ed. 1978); see <u>Flynn v. O'Dell</u>, 281 F.2d 810 (7th Cir. 1960) (holding that the filing of the bankruptcy petition severed the

joint tenancy since the debtor's interest (title) was transferred to the trustee, distinguishing <u>Jackson</u> and <u>Van Antwerp</u>).

The 1979 Bankruptcy Code omitted section 70a.  In its place, Congress enacted section 541, which provides in pertinent part as follows:

"Sec. 541.  Property of the estate

(a) The commencement of a case *** creates an estate.  Such estate is comprised of all of the following property, wherever

located and by whomever held:

(1) *** all legal or equitable interests of the debtor in property as of the commencement of the case." 11

72

U.S.C. §541(a) (1994).

In place of the title of the debtor's property passing to the trustee, the debtor's legal and equitable interests in the property become part of the bankruptcy estate.

In support of his position that filing a petition in bankruptcy severs a joint tenancy, the plaintiff relies

on Tyson.

The defendants respond that decisions of the federal courts are not binding on this court.  See SI Securities v. Bank of Edwardsville, 362 Ill. App. 3d 925, 933, 841 N.E.2d 995 (2005). However, this court may follow federal decisions if it finds them persuasive. Baker v. Jewel Food Stores, Inc., 355 Ill. App. 3d 62, 69, 823 N.E.2d 93 (2005).

In Tyson, the bankruptcy court held that the filing of a chapter 11 bankruptcy petition severed

the joint tenancy, relying on <u>Lambert</u>.[7]
The court in <u>Lambert</u> noted that, while
cases under the prior Bankruptcy Act
held that a filing in bankruptcy
severed a joint tenancy, the present
Bankruptcy Code did not explicitly
provide for the transfer of title of
the debtor's property to the
bankruptcy trustee; merely that the
trustee could administer the property
of the estate.  The court found that
the legislative history provided
clarification, explaining as follows:

---

[7]The debtor in <u>Lambert</u> filed a chapter 7 petition.

"'The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.' [Citation.] And further, in that same report, it is stated: 'Once the estate is created, no interests in property of the estate remain in the debtor.'" Lambert, 34 B.R. at 43, quoting S. Rep. No. 95-989, at 82-83 (1978), reprinted in 1978 U.S.C.A.N. 5758, 5868.

While some sections of the

Bankruptcy Code appeared to indicate that a joint tenancy survived the filing of a bankruptcy petition, the court in Lambert found that the same sections supported a finding that the joint tenancy was severed, further explaining as follows:

"Sec[tion] 363(h) provides in pertinent part, '... the trustee may sell both the estate's interest ... and the interest of any co-owner in property which the debtor had, immediately before the commencement of the case, an

undivided interest as a ... joint tenant ... .' (Emphasis added.) Likewise, Sec[tion] 522(b)(2)(B) provides in pertinent part that a debtor may exempt from property of the estate '... any interest in property in which the debtor <u>had</u>, immediately before the commencement of the case, an interest as a ... joint tenant ... . (Emphasis added.)" <u>Lambert</u>, 34 B.R. at 43, quoting 11 U.S.C. §§363(h), 522(b)(2)(B) (1982).

Relying on <u>Lambert</u>, the court in

Tyson held that, by filing his petition in bankruptcy, the husband lost any joint tenancy interest he may have had in real property he owned with his wife. Therefore, his bankruptcy estate had a one-half interest in the real property. Tyson, 48 B.R. at 412.

Notwithstanding their position that federal decisions are not binding on this court, the defendants maintain that the decision in Anthony demonstrates that where state law requires

the severance of title and not just the possibility of a change in title, the filing of a chapter 7 bankruptcy petition will not sever the joint tenancy.

In Anthony, the debtor owned property in joint tenancy with her mother.  Following the filing of the debtor's bankruptcy petition, her mother died.  A creditor argued that the filing of the bankruptcy petition severed the joint tenancy, rendering the debtor and her mother, tenants-in-common.  The creditor further argued

that the debtor "inherited" her mother's one-half interest with the judgment lien attached because she did not acquire her mother's interest by right of survivorship.  The bankruptcy court held that the filing of the petition did not sever the joint tenancy.

In reaching that conclusion, the court, as did the court in Lambert, examined the language of section 363(h) of the Bankruptcy Code under which the trustee was given the authority to use, sell or lease an

undivided interest in property, such as a joint tenancy.  Unlike the court in Lambert, the court in Anthony did not find the use of the past tense "had" to describe the debtor's interest in the property significant. Instead, the court focused on the provision that the trustee was permitted to sell the debtor's interest only if partition were impractical, if the sale would produce significantly more than its parts and if the benefits to the estate outweighed the detriment to the co-

owners.  The court concluded as follows:

"The language of 11 U.S.C. §363(h), (i), and (j) does not sound as though a joint tenancy is automatically severed by the filing of a bankruptcy petition as a federal rule of bankruptcy law.  It sounds permissive, as though the trustee may sever a joint tenancy if the estate benefits and if the rights of the non-debtor/co-tenant are protected.

In this case the trustee has

not attempted to administer this property by severing or selling the whole.  We hold that the filing of a petition does not sever a joint tenancy with right of survivorship, unless the trustee actually executes against such property by attempting to sever or to sell the whole in order to liquidate such property.  Pennsylvania does not sever a joint tenancy upon the entry of a judgment, but severs upon alienation, such as execution. We would go no further."  Anthony,

82 B.R. at 388.

Additional support for the defendants' position is found in Spain.  There, the bankruptcy court maintained that the failure of the Code to carry forward section 70a, which transferred the title of the debtor to the trustee was an error. The court in Spain found no authority in the Code for the decisions in Panholzer and Lambert, where the courts held that the filing of the petition was a conveyance that severed the joint

tenancy.  The court in <u>Spain</u> concluded as follows:

"The debtor does not transfer his title to [section] 541 property of the estate but holds his title subject to the exercise by the trustee of his rights to sell, use or lease such property by appropriation ***.  The debtor retains the full use, possession and enjoyment jointly with the trustee and the right to refuse to turn over or deliver such property in proper cases.  There is no

voluntary or involuntary transfer of property upon filing.  It may never take place at the option of the trustee and never occurs as to wholly exempt property.  The trustee has no title to property of the estate until he elects to take affirmative action and proceedings are had or orders made."  Spain, 55 B.R. at 854.

As did the court in Anthony, the court relied on section 363(h) to find that no transfer took place by the filing of the petition

and that the trustee's rights were no better than those of a creditor who proceeds to levy and sale.  <u>Spain</u>, 55 B.R. at 855.

In summary, the Bankruptcy Code provides that the debtor's legal and equitable interests in property are transferred to the bankruptcy estate. However, under Illinois law, more than a transfer of the debtor's interest in property is required to sever the joint tenancy.  Illinois law requires a conveyance, which does not occur until the trustee sells or otherwise

disposes of the property and title passes.  Therefore, in Illinois, the filing of a bankruptcy petition does not sever a joint tenancy.

We conclude that the filing of Ms. Koshiyama's bankruptcy petition did not sever the joint tenancy.  The October 24, 2005, recording of the court order reviving the judgment created a valid lien against Mr. Jolly's interest in the Harbor Drive Unit. But, upon his death, his interest in the property ceased to exist and with it the plaintiff's

judgment lien. <u>Harms</u>, 105 Ill. 2d at 224. Therefore, the plaintiff does not have a judgment lien on the Harbor Drive Unit, enforceable against the Jolly estate.

II. Whether the Decision in <u>Maniez</u> Should be Overruled

A. <u>Law of the Case Doctrine</u>

Under the law of the case doctrine, parties may not relitigate issues previously decided in the same case. <u>Long v. Elborno</u>, 397 Ill. App. 3d 982, 989, 922 N.E.2d 555 (2010). Questions of law that were decided on

a previous appeal are binding on the trial court as well as on the appellate court in subsequent appeals. Long, 397 Ill. App. 3d at 989.  The purpose of the doctrine is

> "to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end. [Citation.]  An additional concern addressed by the law of the case doctrine is the maintenance of

the prestige of the courts, for the reason that if an appellate court issues contrary opinions on the same issue in the same case, its prestige is undercut. [Citation.]" Emerson Electric Co. v. Aetna Casualty & Surety Co., 352 Ill. App. 3d 399, 417, 815 N.E.2d 924 (2004).

There are two recognized exceptions to the law of the case doctrine: (1) when a higher court makes a contrary ruling on the same issue subsequent to the lower court's

decision, and (2) when a reviewing court finds that its prior decision was palpably erroneous.  Long, 397 Ill. App. 3d at 989.  The plaintiff asserts that the law of the case doctrine does not preclude reconsideration where the facts before the court have changed or error or injustice is manifest.  See Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc., 284 Ill. App. 3d 627, 633, 627 N.E.2d 1271 (1996).

## B. Discussion

The plaintiff acknowledges that

this court's prior opinion in <u>Maniez</u> constitutes the law of the case. However, he maintains that this court may reconsider its decision under the exceptions to the law of the case doctrine.

1. The Palpably Erroneous Exception

The defendants maintain that the palpably erroneous exception applies only where the appellate court has remanded the case for a new trial on all issues.  See <u>Alwin v. Village of Wheeling</u>, 371 Ill. App. 3d 898, 911, 864 N.E.2d 897 (2007).  However, in

People v. Sutton, 375 Ill. App. 3d
889, 894, 874 N.E.2d 212 (2007), this
court referred to the palpably
erroneous exception without the new
trial qualifier.  See Sutton, 375 Ill.
App. 3d at 894.  Recently, in People
v. Jacobazzi, 398 Ill. App. 3d 890
(2009), the Second District Appellate
Court reviewed the relevant case law
and concluded that the new trial
qualifier was not a definitive part of
the palpably erroneous exception.
Jacobazzi, 398 Ill. App. 3d at 931.
Because its prior decision "was

palpably erroneous and worked a manifest injustice," the court chose to revisit it.  See <u>Jacobazzi</u>, 398 Ill. App. 3d at 932.

In arguing that the decision in <u>Maniez</u> was palpably erroneous, the plaintiff maintains that this court should have determined that the order reviving the judgment and the recording of the order with the correct date of the judgment acted to reform the original judgment memorandum.[8]  The plaintiff's

---

[8]The plaintiff's reformation argument referred to the 2004

reliance on <u>L. E. Myers Co. v. Harbor Insurance Co.</u>, 67 Ill. App. 3d 496, 384 N.E.2d 1340 (1978), is misplaced. In that case, the court held that a third party was bound by the voluntary reformation of an insurance policy to correct a mutual mistake by the contracting parties.  The court determined that the third party's lack of knowledge of the mistake was not determinative because there was no

---

memorandum of judgment. As we have found that the 2004 memorandum did not create a valid judgment lien, we will consider the October 24, 2005, order, which did create a valid lien, in connection with the reformation argument.

97

reliance on the mistake. <u>L. E. Myers Co.</u>, 67 Ill. App. 3d at 504. In the present case, the parties never agreed that there was a mutual mistake, and the plaintiff never sought reformation of the 1997 memorandum.

The plaintiff then maintains that this court's decision in <u>Maniez</u> is erroneous because it contradicted the holding in <u>Dillman v. Nadelhoffer</u>, 23 Ill App. 168 (1887). In that case, the appellate court held that a judgment debtor could not defeat the execution of a judgment by showing

that the judgment date was incorrect.

_Dillman_ was decided prior to 1935 and
therefore lacks precedential
authority.  See _Bryson v. News America
Publications, Inc._, 174 Ill. 2d 77,
95, 672 N.E.2d 1207 (1996) (appellate
decisions issued prior to 1935 have no
binding authority).  Moreover, the
plaintiff's reliance on _Dillman_ is
misplaced.  In the present case, there
was no issue as to the correctness of
the date of the plaintiff's judgment
and no question that the plaintiff
could execute on his judgment, which

were the issues in <u>Dillman</u>.  <u>Dillman</u> did not address whether an incorrect judgment date in the recorded memorandum of judgment created a lien on real property.

The plaintiff does not address or distinguish the cases this court relied on in reaching its decision in <u>Maniez</u>.  While maintaining that it was error to allow a scrivener's error to defeat the lien in this case, the plaintiff ignores the basis for this court's decision: that the recording of the memorandum of judgment with an

incorrect judgment date did not satisfy the strict compliance standard required in complying with section 12-101. Maniez, 383 Ill. App. 3d at 42. Moreover, this court explained why the scrivener's error argument did not aid the plaintiff. See Maniez, 383 Ill. App. 3d at 44 ("Even if we were to agree with the plaintiff that the inclusion of the incorrect date in the memorandum of judgment was a scrivener's error, we must strictly adhere to the requirements of section 12-101"). Therefore, the plaintiff

has failed to establish that this court's decision in Maniez was palpably erroneous.

2. Best Interest of Society and Manifest Injustice

As an alternative ground for overturning this court's decision in Maniez, the plaintiff contends that the decision was contrary to the best interests of society and resulted in a manifest injustice in this case, citing Devines v. Maier, 728 F.2d 876 (7th Cir. 1984).  In that case, the court held that the law of the case

doctrine should not be applied "'where the law as announced is clearly erroneous, and establishes a practice which is contrary to the best interests of society, and works a manifest injustice in a particular case.'"  Devines, 728 F.2d at 880, quoting United States v. Habig, 474 F.2d 57, 60 (7th Cir. 1973).

As we noted previously, federal decisions are not binding on this court.  The two Illinois cases cited by the plaintiff do not reference consideration of the "best

interest of society."  See <u>People v. Williams</u>, 138 Ill. 2d 377, 391-92, 563 N.E.2d 385 (1990); <u>Aardvark Art, Inc.</u>, 284 Ill. App. 3d at 633; see also <u>Jacobazzi</u>, 398 Ill. App. 3d at 931. The plaintiff's discussion of the reformation of judgments under the mortgage foreclosure law fails to consider that, because the requirements of section 12-101 were not strictly adhered to, no lien was created in this case.  Therefore, there was nothing to be reformed or foreclosed upon.  In any event, we

strongly disagree with the plaintiff that the decision in Maniez was contrary to the best interests of society.  As we explained in Maniez, "the purpose of recording the memorandum of judgment is not just to alert the debtor that a judgment had been entered but prospective purchasers as well."  Maniez, 383 Ill. App. 3d at 43.  Strict adherence to section 12-101 assures that the public, as well as the judgment debtor, has reliable information as to existence of a lien on real property.

Finally, the plaintiff argues that the decision in <u>Maniez</u> resulted in a manifest injustice to him.  He incorporates his prior arguments on judicial and equitable estoppel.  As neither judicial nor equitable estoppel barred Ms. Koshiyama from asserting the invalidity of the plaintiff's lien, those arguments do not establish that an injustice occurred.

The plaintiff also argues that it would be a manifest

injustice to allow Ms. Koshiyama, as

the surviving joint tenant,

to benefit by receiving the property

free from the plaintiff's

judgment lien because of a scrivener's

error.  As we explained in rejecting

the plaintiff's palpably erroneous

argument, this was not a case of

scrivener's error.  Moreover, if the

plaintiff believed that he had a valid

judgment lien on the Harbor Drive Unit

property, he fails to explain why he

waited almost a year after the close

of Ms. Koshiyama's bankruptcy case to

seek to foreclose the judgment lien. Finally, the plaintiff is not without a remedy for inaccuracy of the judgment date in the memorandums. We conclude that the plaintiff has failed to establish that the decision in Maniez resulted in a manifest injustice under the circumstances of this case.

CONCLUSION

As the plaintiff no longer had a valid judgment lien against the Harbor Drive Unit, the circuit court's dismissal of the complaint to

foreclose the judgment lien was proper.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GARCIA and LAMPKIN, JJ., concur.